NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0715n.06
Filed: October 4, 2006

No. 05-3687

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NATHER HABEB SHABA TAWFEK AL-SHABEE, | ) ) ) | |
| Petitioner, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) ) | UNITED STATES DISTRICT COURT FOR THE NORTHERN |
| ALBERTO R. GONZALES, Attorney General of the United States, | ) ) ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | OPINION |

Before: RYAN and MARTIN, Circuit Judges; MARBLEY, District Judge.*

ALGENON L. MARBLEY, District Court Judge.

Petitioner Nather Habeb Shaba Tawfek Al-Shabee, a citizen of Iraq, seeks review of a

decision of the Board of Immigration Appeals (the "Board"), affirming the Immigration Judge's

denial of asylum, withholding of deportation, and relief under the United Nations' Convention

Against Torture ("CAT"). Al-Shabee also appeals the Board's decision that the Immigration

Judge afforded Al-Shabee due process during his removal proceeding. Because the Immigration

Judge's determination that the Petitioner was not credible was supported by substantial evidence,

and because the Board correctly determined that Al-Shabee had not demonstrated any prejudice

---

*The Honorable Algenon L. Marbley, United States District Judge for the Southern District of
Ohio, sitting by designation.

as a result of an alleged due process violation, we deny the petition for review as to Al-Shabee's removability.

## I. BACKGROUND

### A. Facts

The following facts were alleged by the Petitioner in his request for asylum, withholding of deportation, and relief under the CAT.

Petitioner Nather Habeb Shaba Tawfek Al-Shabee is a citizen and national of Iraq. Al-Shabee and his family are Chaldean Christians, which are ethnic and religious minorities in Iraq. Additionally, his father and all of his uncles were members in the Assyrian Democratic Movement ("ADM"), a political party that opposed Saddam Hussein and the Ba'ath Party. In April 1994, Al-Shabee's father was arrested and detained for two and a half months for supporting the ADM.

According to Al-Shabee, he has suffered from religious persecution since his early childhood. In elementary school, he was compelled to study Islam, and he was penalized for not being a Moslem. His Arabic language teacher called him derogatory names "because the Moslems considered the Christians and Jews as impure according to their Islamic law, which instigates them to hate." Al-Shabee suffered from this mistreatment through intermediate school, when teachers forced him to memorize poems that glorified Islam, and through high school, when he was constantly interrogated and criticized for not supporting the Ba'ath Party.

In 2001, Al-Shabee graduated from the College of Agriculture at the University of Mousel, receiving a bachelor's degree and a master's degree in Agriculture. After graduation, he served for 90 days in the Iraqi military, which all college graduates in Iraq are required to do.

While in the military, Al-Shabee was detained because of his refusal to join the Ba'ath Party. Even after Al-Shabee was demobilized from the military and he returned to his home village, Ba'ath Party officials continued to recruit his support aggressively.

On July 17, 2002, Al-Shabee claims that some of the religious leaders from the Shiite Al-Shibek tribe entered their village and began to construct a mosque, attempting to convert the villager to Islam by force. The Shiite Al-Shibek tribesmen blocked the village roads and otherwise interfered with the villagers' lives. In response, Al-Shabee and about twenty other young men from the village, using guns, engaged the Shiite Al-Shibek tribesmen in a fight. As a result of the fight, the Shiite Al-Shibek tribesmen fled the area and returned to their own village.

On October 15, 2002, Al-Shabee received a call up notice, instructing him to report for duty with the "Al Quds Army," a state sanctioned militia. The notice indicated that he would be imprisoned if he did not appear at the Ba'ath Party center to serve. Al-Shabee complied with the notice, but instructed the militia men that he would be unable to serve because his family needed him to work on their farm. Al-Shabee was unable to persuade them to relieve him of service. Accordingly, the militia sent him to a training camp in the Al Salama territory of the State of Nineva on October 16, 2002. Al-Shabee escaped from the training camp on the following day, and he returned to his village. He stayed at his uncle's house, realizing that the Ba'ath Party officials would likely search for him at his house. Two days later, Ba'ath Party agents approached Al-Shabee's father, demanding Al-Shabee's return to the training camp and threatening to imprison his father.

A few days later, on October 24, 2002, members of the Shiite Al-Shibek tribe returned to Al-Shabee's village to occupy their land. The tribesman argued that they were entitled to the

land as compensation for the injuries their fellow tribesmen had suffered during the July 17, 2002 shooting incident. This initiated another brutal fight between the villagers and the Shiite Al-Shibek tribe members. The tribesmen, using knives and small swords, killed four of the villagers and wounded others. When the police intervened, the killers were arrested, and Al-Shabee testified against two of the tribesmen he had seen carrying knives and stabbing the villagers. Some of the Moslem religious leaders and Ba'ath Party officials intervened on behalf of the alleged murderers. Nevertheless, the tribesmen were convicted and sentence to five months imprisonment.

A few days later, Al-Shabee received a letter at his house from members of the Al-Shibek and other Moslem tribes, threatening to kill him because he had testified. Al-Shabee's father insisted that Al-Shabee flee Iraq. Al-Shabee contacted a Kurdish smuggler, and he fled Iraq on November 4, 2002, bound for the United States of America.

### B. Procedural History

Al-Shabee entered the United States on December 2, 2002. Soon after he crossed the border from Tijuana, Mexico into California, a border patrol officer stopped him and served him with a Notice to Appear to a removal hearing for his illegal entry into the United States. Al-Shabee admitted to the factual allegations in his Notice to Appear and conceded that he is removable as charged. Al-Shabee's removal case was then transferred from San Diego to Detroit.

On August 13, 2003, Al-Shabee filed an Application for Asylum and for Withholding of Removal and supporting documentation. On December 8, 2003, Al-Shabee appeared before an immigration judge for his removal proceeding. During the hearing, Al-Shabee did not present

any witnesses.  Following the hearing, the Immigration Judge issued an oral decision denying Al-Shabee the relief he requested.[1]  The Immigration Judge based her ruling on an adverse credibility determination.  On appeal, the Board adopted and affirmed the Immigration Judge's decision in a per curium order.  Additionally, the Board found that Al-Shabee had not articulated a due process violation.

## II.  ANALYSIS

### A.  Al-Shabee's Application for Asylum and Related Relief

When the Board summarily adopts the decision of an Immigration Judge without issuing its own opinion, we review the Immigration Judge's decision as the final administrative order. *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) (citing *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).  The Board's findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  As long as there exists substantial evidence in the record from which the Board based its decision, we cannot reverse the Board's decision to deny Petitioner relief from removal.  *See Adhiyappa v. INS*, 58

---

[1]We encountered significant difficulty when we attempted review the written transcript of the Immigration Judge's oral order in the Joint Appendix for this case, due to a seemingly lackluster copy job.  As a result, we requested that counsel provide us with a more legible written copy of that oral order.  Counsel failed to respond to our request prior to oral argument in this matter.  Initially, we were hesitant to render a decision on the merits in this case, and we considered remanding this case back to the Board, because we did not have a complete record to review on appeal.

Nevertheless, we have decided to address the merits of this appeal for two reasons.  First, both parties' counsel maintained that there was sufficient evidence in the record for this Court to render an opinion during oral argument in this matter.  Second, on July 20, 2006, the day following oral argument, the government supplemented the record with a corrected written copy of the Immigration Judge's oral order.  While we choose to reach the merits in this case, we also caution counsel, in the strongest manner possible, to respond to this Court's future requests in a more expeditious manner.

F.3d 261, 265 (6th Cir. 1995) ("All the substantial evidence standard requires is that the [Board]'s conclusion, based on the evidence presented, be substantially reasonable. Substantial evidence is thus a deferential standard which plainly does not entitle a reviewing court to reverse . . . simply because it is convinced that it would have decided the case differently.") (internal quotations omitted).

An applicant for asylum under Section 208(a) of the Immigration and Nationality Act has the burden of demonstrating that he is a "refugee," meaning that he is unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 436 (1987).

A person may qualify as a refugee based solely on past persecution. 8 C.F.R. 208.13(b)(1). If past persecution is established, then a rebuttable presumption arises that the applicant also has a well-founded fear of future persecution. *Id*. After an applicant establishes past persecution, the presumption of future persecution can be rebutted if an immigration judge finds, by a preponderance of the evidence, that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in his country of nationality. *Id*.

Alternatively, an applicant may show a well-founded fear of future persecution if he demonstrates that he genuinely fears persecution if he returns to his home country and that a reasonable person in his circumstances would fear persecution. 8 C.F.R. 208.13(b)(2)(I); *see also Cardoza-Fonseca*, 480 U.S. at 439 ("In general, the applicant's should be considered well-founded if he can establish, to a reasonable degree, that his continued stay in his country of origin

6

has become intolerable to him for the reasons stated in the definition, or would for the same reasons be intolerable if he returned there.") (quotation omitted).

A request for asylum automatically includes a request for withholding deportation. 8 C.F.R. § 208.3(b). To make a sufficient showing for withholding of deportation, an applicant must show, by a clear probability standard, that his life or freedom would be threatened on account of one of the enumerated grounds. *INS v. Stevic*, 467 U.S. 407 (1987); *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). Because the standard for granting asylum is less stringent than the standard for withholding of deportation, an applicant who does not establish eligibility for asylum is not eligible for withholding of deportation. *See Mikhaievitch*, 146 F.3d at 391.

### 1. Immigration Judge's Credibility Findings

Al-Shabee's first argument is that the Immigration Judge improperly found him to be not credible. Credibility determinations are considered findings of fact, and therefore, they are granted substantial deference. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004).

In this case, the Immigration Judge identified portions of Al-Shabee's testimony that she found to be not credible. For example, the Immigration Judge noted in her decision that Al-Shabee "claim[ed] to have been abused verbally, forced to learn Islamic poetry and his grades suffered to the extent that he was unable to achieve a grade point necessary to enter the college of his choice. Nevertheless, the respondent was given a higher education."

Moreover, the Immigration Judge identified inconsistencies in Al-Shabee's testimony with respect to the events surrounding the fighting that occurred between Al-Shabee's villagers and a rival Moslem tribe. She described how Al-Shabee's oral testimony was unclear and

7

contradictory as to whether the incident resulted in any casualties. She further observed that, on cross-examination, Al-Shabee claimed that the Shiite Al-Shibek tribesmen were building a mosque in his village when the fighting commenced, despite his affidavit, which explained that these events happened "when [the Moslems] cut off roads to the village people and precluded them from working on their farms."

The Immigration Judge was also troubled with the conflicts apparent in Al-Shabee's testimony concerning events that occurred in October 2002, shortly before Al-Shabee's departure from Iraq. In discussing these inconsistencies, the Immigration Judge provided the following:

> [Al-Shabee] claims that on October 14th or 15th he got a letter telling him he had to report [to] the army and to retake Jerusalem or Palestine, remained one day in a training camp and deserted returning to the family. At the same time, [Al-Shabee] is apparently working his father's fields; . . . he's also obtained a passport on October 9th, although he claims that he was told the passport would not permit his travel outside the country because he had a masters degree. He testifies at a trial with the Ba'ath Party police against two Shiites who allegedly killed two members of the Christian Chaldean community. It's presumed he testified under his own name, in open court, nothing happened. He was not detained for desertion, although allegedly he deserted no more than 10 days previously and Ba'ath Party members had come to his father's home on approximately the 18th or 19th telling him that [Al-Shabee] was in serious trouble for this desertion. He remain[ed] following this testimony for a period of some [] 10 days, while he made arrangements to travel to the United States. Quite frankly this is not consistent or credible.

Additionally, the Immigration Judge ruled that Al-Shabee failed to provide sufficient evidence to meet his burden to prove he was a "refugee." Specifically, the Immigration Judge found:

> [Al-Shabee] has submitted no evidence . . . that there was the forcible erection of a mosque in his village, which resulted in the

8

attack in July 2002 by he and some 20 others. [Al-Shabee] claims that, with respect to the attack in October, a trial was held, he testified, and the individuals were convicted. He submitted no evidence of this, followed by his own testimony [that] when he left Iraq, he knew he was coming to the United States to apply for asylum. These are documents which clearly could have been obtained after his entry in December 2002. There is quite simply inconsistent testimony in this matter and [Al-Shabee] has failed to submit corroborative evidence.

Because the Immigration Judge has identified substantial evidence in the record to support her factual finding that Al-Shabee's story was not credible, we will not reverse her decision under review. *See Adhiyappa v. INS*, 58 F.3d at 265.

## 2. Past Persecution

Next, Al-Shabee argues that the Immigration Judge should have granted him asylum after she found the he had suffered past persecution.[2] His argument, however, fails to consider the effect that the government's evidence of changed circumstances had on the Immigration Judge's finding. In particular, the Immigration Judge found:

> The Government has currently submitted evidence of changed circumstances. []. The entry into Iraq and the dispossession of the Ba'ath Party obviates Al-Shabee's concerns of past persecution. The coalition forces and the Assyrian Democratic Party in company with the Christian Democratic Party controlled the north. [Al-Shabee] has submitted no evidence which would establish that,

---

[2]The Immigration Judge's finding of past persecution appears contradictory. Her oral decision provides the following:

> The Court takes note that [Al-Shabee] claims to have been detained in that 90 days [that he served in the Iraqi military after he graduated from college] for his failure to join the Ba'ath Party, but by his own testimony was not harmed, beaten, threatened, or tortured at any time. Therefore, the Court finds that there is evidence in the record of past persecution to [Al-Shabee].

9

should he return, that an attack by a Shiite Muslim would not be met with a response by either the coalition or the government.

After an applicant establishes past persecution, the presumption of future persecution can be rebutted if an immigration judge finds, by a preponderance of the evidence, that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in his country of nationality. 8 C.F.R. 208.13(b)(1)(I). Here, the Immigration Judge made such a finding of a change in circumstances in Iraq, which had the effect of rebutting Al-Shabee's presumption of future persecution. Because the Immigration Judge based her factual finding of changed circumstances on evidence in the record, we will not reverse her decision. *See Adhiyappa v. INS*, 58 F.3d at 265.

### 3. Fear of Persecution

Finally, Al-Shabee contends that the Immigration Judge should have granted him asylum because he made a sufficient showing of his well-founded fear of future persecution. The Immigration Judge expressly rejected Al-Shabee's arguments:

> [Al-Shabee's] fear of some punitive action by a group for attacks which he undertook does not rise to the level of showing that it is on account of either his religion or his particular social group, but rather appears to be a revenge attack for an attack taken by [Al-Shabee] himself.

> In any event, the Court finds that [Al-Shabee] has not established a well-founded fear of persecution on any of the five [statutory] grounds should he return. It follows therefore that [Al-Shabee] has failed to establish a clear probability of persecution on the statutory grounds necessary to establish relief under Section 241(b)(3).

Because we must defer to the Immigration Judge's factual finding, which is based on her review of evidence in the record, that Al-Shabee has not established a well-founded fear of persecution, this court will not reverse her decision. *See Adhiyappa v. INS*, 58 F.3d at 265.

## B. Due Process

Al-Shabee also asserts that the Immigration Judge violated his due process rights when she "attempt[ed] to dissect [Al-Shabee's] testimony, application and affidavit as well as the documents with the express purpose of finding inconsistencies to deny the Petitioner's claim." Pet'r Br. at 11. Aliens are entitled to the protections of due process in asylum hearings. *See Ali v. Ashcroft*, 366 F.3d 407, 412 (6th Cir. 2004). This protection entitles aliens to a full and fair hearing. *Id*. To demonstrate that a decision violates the Due Process Clause, an applicant must establish that he has been deprived of a life, liberty, or property interest. *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000). We review *de novo* allegations of due process violations by an immigration judge during a removal hearing. *Mikhaievitch*, 146 F.3d at 391.

In this case, Al-Shabee has not asserted a claim that rises to the level of a due process violation. He merely asserts that the Immigration Judge erred when she made incorrect findings with respect to his credibility. He notes that "the [Immigration Judge] took pains to avoid an objective review of the facts in the application and [Al-Shabee's] testimony." Pet'r Br. at 13. Al-Shabee's disagreement with the Immigration Judge's order, however, does not constitute a violation of the Due Process Clause. *See Catholic Soc. Serv., Inc. v. Reno*, 134 F.3d 921, 927 (9th Cir. 1998) ("Simply labeling a claim as constitutional does not suffice to make it so.") (citation omitted). Therefore, Al-Shabee's due process claim is without merit.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the Board's decision and **DENY** Petitioner's request for review.