NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0169n.06

No. 20-3571

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARCELO ARAUJO-PADILLA, | ) | **FILED** |
| | ) | Mar 30, 2021 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

Before: WHITE, LARSEN, and NALBANDIAN, Circuit Judges.

LARSEN, Circuit Judge. In 2012, the Department of Homeland Security (DHS) charged Marcelo Araujo-Padilla with removability for being an alien present in the United States without being admitted or paroled. Araujo conceded removability but applied for cancellation of removal. An Immigration Judge (IJ) denied Araujo's application and ordered him removed to Mexico. The Board of Immigration Appeals (BIA or Board) affirmed. In his petition for review, Araujo argues that the BIA erred by concluding that he failed to show "exceptional and extremely unusual hardship" to a qualifying relative, which is a prerequisite for an alien seeking cancellation of removal. 8 U.S.C. § 1229b(b)(1)(D). The government contested our jurisdiction. For the following reasons, we hold that we have jurisdiction to entertain Araujo's petition, but we deny it on the merits.

I.

Marcelo Araujo-Padilla is a citizen of Mexico who first entered the United States illegally in 1988. He lives just outside Nashville. He is separated from his wife, Maria Revario, with whom he has six children. Five of the children are United States citizens, but Revario is not; she lacks legal status in the United States.

Following a DUI arrest in 2012, DHS served Araujo with a notice to appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for being an alien present in the United States without having been admitted or paroled. Through counsel, Araujo admitted the allegations in the notice to appear and conceded removability.

Araujo then applied for cancellation of removal. An IJ held a hearing on the application on December 14, 2016. At the time of the hearing, Araujo's children ranged from fifteen to twenty-three years old. Two were in high school and one attended Belmont University on a scholarship. The other three had completed high school. Araujo lived about ten minutes away from his children and would see them on the weekends. His niece and sister (both lawful residents) lived in the Nashville area too. Five of Araujo's six children lived with their mother; none lived with Araujo. Araujo confirmed that all of his children would stay in the United States even if he were deported.

Araujo testified that he provided his family with $1,000 per month in financial support from his job doing ceramic work, and his eldest daughter added that Araujo provides additional support if needed. Araujo did not believe that he would be able to get a job in Mexico. So, he argued that he qualified for cancellation of removal because his departure would create "exceptional and extremely unusual hardship" for his four qualifying-relative children.[1] 8 U.S.C.

---

[1] Only Araujo's children who were under twenty-one at the time counted as qualifying relatives for purposes of the cancellation-of-removal statute. *See* 8 U.S.C. §§ 1101(b)(1), 1229b(b)(1)(D); *see also Matter of Valentin Isidro-Zamorano*, 25 I. & N. Dec. 829, 830–31 (BIA 2012).

§ 1229b(b)(1)(D). Araujo's wife, Revario, worked as a cleaner at McDonald's making $250 per week, and three of Araujo's children earned a minimum of $350 each per week at their respective jobs. The family also received assistance from the State of Tennessee. Still, Araujo and his eldest daughter opined that the children could not survive without Araujo's monthly contribution. Araujo further testified that his wife could not get a job making any more money because she doesn't speak English and has diabetes. He also stated that his youngest daughter had exhibited some signs of depression due to his removal proceedings.

Following the hearing, the IJ issued a written opinion. The IJ found Araujo and his eldest daughter to be credible witnesses. But he denied Araujo's application for cancellation of removal on two grounds. First, the IJ concluded that Araujo had not met his burden of showing ten years of continuous physical presence in the United States. *See* 8 U.S.C. § 1229b(b)(1)(A). And second, Araujo had not shown that any of his qualifying relatives would experience "exceptional and extremely unusual hardship" upon his removal to Mexico. *See id.* § 1229b(b)(1)(D).

Araujo appealed to the BIA. The Board affirmed the IJ's determination that Araujo had not shown the requisite level of hardship to any of his qualifying-relative children. It also rejected Araujo's due process arguments and declined to reach the alternative continuous-presence issue. Araujo then filed a timely petition for review in this court.

II.

Before proceeding to the merits, we must determine whether we have jurisdiction to review the BIA's decision. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Immigration and Nationality Act (INA) provides that "[t]he Attorney General may cancel [the] removal" of an inadmissible or deportable alien, but only if the alien first establishes four preconditions to relief. 8 U.S.C. § 1229b(b)(1). In his petition, Araujo contends that the BIA erred

by holding that he failed to establish one of them—"that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States[.]" *Id.* § 1229b(b)(1)(D).

The INA places two constraints on our jurisdiction in this area. First, we may not review "any judgment regarding the granting of relief" under the cancellation-of-removal statute. *Id.* § 1252(a)(2)(B)(i). Second, we may not review the Attorney General's final, discretionary decision as to whether to cancel removal for those aliens who meet all four requirements. *Id.* § 1252(a)(2)(B)(ii). But the INA also provides a "safe harbor," *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021), which allows us to entertain "constitutional claims or questions of law raised upon a petition for review," 8 U.S.C. § 1252(a)(2)(D).

Traditionally, we interpreted this safe-harbor provision to mean that only "purely legal questions, such as constitutional and statutory construction questions," were within our jurisdiction. *Khozhaynova v. Holder*, 641 F.3d 187, 192 (6th Cir. 2011) (citing *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)). "[A]s long as the Board 'articulated the proper [legal] standard,' we could not review its application of the standard to the facts." *Singh*, 984 F.3d at 1153 (quoting *Ettienne v. Holder*, 659 F.3d 513, 519 (6th Cir. 2011)); *see, e.g.*, *Lopez v. Sessions*, 851 F.3d 626, 632 (6th Cir. 2017); *Reyes v. Holder*, 410 F. App'x 935, 938 (6th Cir. 2011).

But the Supreme Court's decision in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020), changed the landscape. There, the Court concluded that "the phrase 'questions of law' in the [safe-harbor provision] includes the application of a legal standard to undisputed or established facts." *Id.* at 1067. That decision abrogated our precedent. *See Singh*, 984 F.3d at 1153. We now understand our jurisdiction to extend to "mixed questions of law and fact," including the BIA's "ultimate hardship conclusion" in a cancellation-of-removal proceeding. *Id.* at 1149, 1154. That

is precisely the question Araujo presents here—"whether the facts found by the immigration judge rise to the level of hardship required by the legal test." *Id.* at 1150. Therefore, we have jurisdiction to assess the merits of Araujo's claim.[2]

### III.

That does not mean, however, that we may substitute our judgment for that of the agency. Although 8 U.S.C. § 1252(a)(2)(D) permits us to "review" Araujo's claim, the provision is silent as to the *standard of review* that we must apply in assessing the BIA's hardship conclusion. We have observed that "[t]he nature of this mixed question likely signals deference to the Board," but our court has not yet decided "what specific standard of review should govern[.]" *Singh*, 984 F.3d at 1154. We again leave that question for another day. Under any standard, Araujo cannot prevail.

Araujo does not dispute the BIA's legal test for assessing "exceptional and extremely unusual hardship." Under the Board's precedent, "the alien must provide evidence of harm to his spouse, parent, or child *substantially* beyond that which ordinarily would be expected to result from the alien's deportation." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (BIA 2001) (some emphasis omitted) (quoting H.R. Conf. Rep. No. 104-828 (1996)); *see Valdez-Arriaga v. Barr*, 778 F. App'x 380, 383 (6th Cir. 2019) (describing this as an "onerous standard"). In making this determination, "all hardship factors should be considered in the aggregate." *Monreal-Aguinaga*, 23 I. & N. Dec. at 64. And "consideration should be given to the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468 (BIA 2002). Even so, Congress's choice of statutory language reveals its

---

[2] To be clear, the INA still "forbid[s] appeals of factual determinations[.]" *Singh*, 984 F.3d at 1149 (alterations in original) (quoting *Guerrero-Lasprilla*, 140 S. Ct. at 1073). Araujo does not challenge the agency's factfinding.

expectation that aliens will seldom be eligible for cancellation of removal. Such relief "is to be limited to truly exceptional" and "very uncommon" situations. *Monreal-Aguinaga*, 23 I. & N. Dec. at 59, 62 (internal quotation marks and citation omitted); *see In re Andazola-Rivas*, 23 I. & N. Dec. 319, 324 (BIA 2002) ("Although the hardships presented here might have been adequate to meet the former 'extreme hardship' standard for suspension of deportation, we find that they are not the types of hardship envisioned by Congress when it enacted the significantly higher 'exceptional and extremely unusual hardship' standard.").

Araujo contends that the BIA "failed to properly weigh" five discrete hardships to his qualifying relatives and disregarded the "cumulative effect" of these hardships. We disagree. The Board expressly stated that it "consider[ed] the totality of the respective hardship factors" and still concluded that Araujo had not "demonstrated that any of his qualifying relatives would suffer exceptional and extremely unusual hardship."[3] *See also Aoraha v. Gonzales*, 209 F. App'x 473, 476 (6th Cir. 2006) ("The agency's decision is entitled to a presumption of regularity and thus a presumption that the evidence was considered.").

In addition, the Board appropriately weighed each of the claimed hardships to Araujo's qualifying relatives. Araujo first argues that his deportation would diminish his ability to provide

---

[3] On this front, Araujo faults the Board for relying on its recent decision in *Matter of J-J-G-*, 27 I. & N. Dec. 808 (BIA 2020). That is, he suggests the Board's passing citation to *J-J-G-* indicates that it required him to prove that "a medical condition be 'serious' in order to meet [his] hardship burden" and that this new test "contradict[ed] established case law that hardship must be considered cumulatively." We are puzzled by Araujo's argument. The Board did not cite *J-J-G-* for either of these propositions. And again, it affirmatively stated that it "consider[ed] the totality of . . . hardship factors" in rejecting Araujo's application. Furthermore, Araujo misreads *J-J-G-* as "designat[ing]" a "serious medical condition as the minimum requirement to meet the hardship standard." That decision expressly noted "that a qualifying relative who does *not* suffer from a serious medical condition may, in light of other relevant hardship factors, experience the requisite level of hardship as a result of an applicant's removal." *Id.* at 811 n.4; *see also id.* at 811 ("The exceptional and extremely unusual hardship for cancellation of removal is based on a cumulative consideration of all hardship factors[.]").

financial support for his children. The Board acknowledged that Araujo's family "will experience financial hardship upon [his] removal." But it also identified a number of reasons why such expected hardship was not exceptional and extremely unusual. *See Navarro v. Holder*, 505 F. App'x 441, 447 (6th Cir. 2012) (approving of similar reasoning). For one, Araujo's wife would continue to work, earning $250 per week. On top of that, the Board observed that Araujo's three working children could "assist [Araujo's] spouse with financial obligations or provide a greater financial role if [he] were removed." In fact, all of his children "are approaching the age of adulthood" and could contribute meaningfully to the family. Araujo's sister and niece also live nearby and could "assist the family with care or other obligations." And Araujo's "children receive government assistance and they can continue to be enrolled in Tenn Care." All of these factors cut against Araujo's claim.

Second, Araujo asserts that the BIA failed to consider how Revario's diabetes would "exacerbat[e] the overall hardship that [his] removal would cause his family." But the Board noted that, as a non-citizen, Revario "is not a qualifying relative." And, other than arguing that Revario's condition limits "her future earning potential" and "ability to obtain a higher paying employment," Araujo fails to show how her condition would cause exceptional hardship to his qualifying-relative children. *See* 8 U.S.C. § 1229a(c)(4)(A)(i) (providing that it is the alien's burden to establish his eligibility for cancellation of removal); *Pereida v. Wilkinson*, 141 S. Ct. 754, 2021 WL 816351, at *4 (2021) (same). For the reasons stated above, this economic hardship does not suffice to qualify him for cancellation of removal. *See Andazola-Rivas*, 23 I. & N. Dec. at 323 ("[I]t has long been settled that economic detriment alone is insufficient to support even a finding of extreme hardship." (citing *In re Pilch*, 21 I. & N. Dec. 627, 630–31 (BIA 1996))).

Third, Araujo points us to testimony in the record that his then-fifteen-year-old daughter had shown some signs of depression due to his impending removal. Specifically, she sometimes locked herself in her room and did not want to eat. We recognize the emotional difficulty that any deportation proceeding will generate. However, like the BIA, we cannot say that this hardship is "substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." *Monreal-Aguinaga*, 23 I. & N. Dec. at 65.

Fourth, Araujo maintains that his removal would result in "severely diminished educational opportunities" for his children. But he fails to suggest how his children would be "deprived of . . . schooling or of an opportunity to obtain an[] education." *Andazola-Rivas*, 23 I. & N. at 323; *see Singh*, 984 F.3d at 1154–55. As the BIA observed, his children would remain "in the United States" (with its free public education), and "[t]he record does not show" that the children had "any compelling special needs in school." Nor does it show how his one child in college—who attended Belmont University on a scholarship—would suffer from educational deprivation based on Araujo's removal.

Fifth, Araujo insists that the BIA "never addressed" his lack of lawful immigration options as a factor in the hardship calculus. Not so. The Board acknowledged Araujo's argument regarding his inability to "immigrate to the United States in the future" and was "unpersuaded" that this could "change the outcome of his proceedings." There was no need for the Board to say more. *See Kilic v. Barr*, 965 F.3d 469, 474 (6th Cir. 2020). "What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (citation omitted). We are satisfied that the Board adequately considered

Araujo's argument here. *See Stserba v. Holder*, 646 F.3d 964, 978–79 (6th Cir. 2011). At any rate, Araujo cannot show that his lack of immigration options, either alone or in combination with his other arguments, amounts to "exceptional and extremely unusual hardship" to any of his qualifying relatives. 8 U.S.C. § 1229b(b)(1)(D). Thus, we will not set aside the BIA's decision that Araujo is statutorily ineligible for cancellation of removal.

IV.

Finally, Araujo argues that the IJ and BIA violated his right to due process. In doing so, he essentially repackages his challenge to the BIA's ultimate hardship determination in the guise of a constitutional claim. This does him no good. Even assuming the Due Process Clause applies in a cancellation-of-removal proceeding, *but see Tomaszczuk v. Whitaker*, 909 F.3d 159, 164 (6th Cir. 2018), this court and others have repeatedly rejected attempts like Araujo's to "recast mere disagreement with the BIA's decision as a procedural due process violation," *Lopez v. Att'y Gen. U.S.*, 757 F. App'x 163, 165 (3d Cir. 2018); *see, e.g.*, *Gil-Cerqueda v. Rosen*, ___ F. App'x ___, 2021 WL 37542, at *6 (6th Cir. Jan. 5, 2021); *Al-Shabee v. Gonzales*, 188 F. App'x 333, 339 (6th Cir. 2006).

Further, Araujo has not identified any procedural deficiencies in the agency's handling of his petition. *See Bi Qing Zheng v. Lynch*, 819 F.3d 287, 297 (6th Cir. 2016). Before the IJ, Araujo received a full and fair hearing with the opportunity to call witnesses and the assistance of counsel. He then took advantage of his right to an appeal (again, with counsel), and the Board even granted his motions for a briefing extension and to file an oversized brief. Along the way, the IJ and the Board issued written opinions setting forth their respective findings of fact and conclusions of law. Moreover, and as described above, both the IJ and the Board applied the right law in those opinions; both adhered to the BIA's precedent; both considered Araujo's evidence and the unique

facts of his case; and both adequately responded to his arguments. *See Kilic*, 965 F.3d at 473–74; *Quintero-Florentino v. Barr*, 788 F. App'x 348, 351 (6th Cir. 2019); *Navarro*, 505 F. App'x at 447. In short, Araujo's "contention that the agency failed to consider the relevant issues or apply the standard required by [its precedent] is baseless." *Valdez-Arriaga*, 778 F. App'x at 384. We reject his due process claim.

\* \* \*

For the foregoing reasons, Araujo is statutorily ineligible for cancellation of removal. We therefore DENY his petition for review.