RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0005p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

AVTAR SINGH,

                               *Petitioner*,

    *v.*

JEFFREY A. ROSEN, Acting Attorney General,

                               *Respondent*.

> No. 20-3127

───────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 076 297 680.

Decided and Filed:  January 7, 2021

Before:  DAUGHTREY, NALBANDIAN, and MURPHY, Circuit Judges.

───────────────

#### COUNSEL

───────────────

**ON BRIEF:**  Genet Getachew, LAW OFFICE OF GENET GETACHEW, Brooklyn, New York, for Petitioner.  Lori B. Warlick, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

#### OPINION

───────────────

MURPHY, Circuit Judge.  Avtar Singh, an immigrant in this country unlawfully, applied for "cancellation of removal" to prevent his removal to India.  The Board of Immigration Appeals denied his request because Singh failed to establish that his removal would cause "exceptional and extremely unusual hardship" to his family.  8 U.S.C. § 1229b(b)(1)(D).  In essence, Singh now raises two arguments: that the Board wrongly held that he did not meet the requirements for cancellation of removal and that the immigration judge acted with

unconstitutional bias. We traditionally could not review the "hardship" portion of Singh's first argument because our cases treated the Board's "hardship" decision as the type of discretionary call that falls outside our jurisdiction. The Supreme Court recently held, however, that courts have jurisdiction to review the Board's "application of a legal standard to settled facts" (otherwise known as a mixed question of law and fact). *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068–69 (2020). And the Board's application of the statutory "hardship" standard to an immigrant's facts qualifies as such a mixed question. *Guerrero-Lasprilla* thus makes clear that we may review Singh's hardship argument. That argument nevertheless fails on the merits. And we may not review Singh's second argument even after *Guerrero-Lasprilla* because he did not exhaust his unconstitutional-bias claim with the Board. So we deny his petition for review in part and dismiss it in part.

I

Singh, a native and citizen of India, came to the United States in September 1991 when he was around 22 years old. Although he obtained a temporary transit visa authorizing him to work on a ship, Singh decided to drive cabs instead. Since 1991, he has taken periodic trips back to India but has otherwise remained in this country. In 1997, Singh married his first wife, Victoria. She filed a petition that would allow Singh to remain here legally, but the government concluded that their marriage was likely fraudulent. Victoria withdrew the petition and divorced Singh a short time later. In 2005, Singh married his second wife, Ashley. She too filed a petition on Singh's behalf. Yet again, an investigation revealed that Singh had not lived with Ashley. The government concluded that this marriage was a "sham" and denied Ashley's petition in 2009.

A few months later, the government charged Singh with being removable for remaining in the country illegally. 8 U.S.C. § 1227(a)(1)(B). On October 30, 2009, it served Singh with a "notice to appear" at a removal hearing. This notice lacked the date and time of the hearing. On November 17, the immigration court followed up with a second notice alerting Singh that his hearing would occur on August 2, 2010. At that hearing, Singh conceded he was removable. But he expressed an intent to apply for "cancellation of removal," a form of relief that the

Attorney General may grant if, among other things, an immigrant's removal would cause hardship to certain relatives.  *See* 8 U.S.C. § 1229b(b)(1).

At another hearing years later, Singh sought to prove that his removal would harm his children and mother.  Singh and Ashley never divorced.  In 2010, however, he began a relationship with Rekha Rani.  Singh and Rani have two children who are U.S. citizens: a son born in 2011 and a daughter born in 2013.  Singh testified that Rani and the children plan to move with him to India if he is removed but that the children would struggle there.  He asserted that they have health problems and would receive inadequate care.  Singh claimed that his daughter was deaf but later backpedaled and said she has issues speaking.  (She passed a hearing screening when she was four years old.)  Singh also claimed that his son, who was born prematurely, is small for his age and must wear a leg brace.  Aside from his children's health, Singh further claimed that they could not obtain adequate educations in India.  He separately noted that his mother, a legal permanent resident, has lived with him for years but would remain in the United States if he were removed.  He testified that she suffers from mental-health issues and has trouble walking.  But he conceded that she owns a convenience store and has a good relationship with his two brothers, both of whom are U.S. citizens living in this country.

The immigration judge denied Singh's application on four grounds.  Two are relevant here.  First, the judge found that Singh failed to prove that he had continuously been present in the United States for a ten-year period immediately prior to the date that he was served with his "notice to appear."  8 U.S.C. § 1229b(b)(1)(A), (d)(1).  He received that notice on October 30, 2009.  Given his trips to India, however, Singh failed to establish his presence in the United States over several periods between 1999 and 2004.  Second, the judge found that Singh failed to prove that his "removal would result in exceptional and extremely unusual hardship to" his mother or children.  *Id.* § 1229b(b)(1)(D).

The Board of Immigration Appeals upheld this decision.  It agreed that Singh failed to show his continuous presence in the United States for the ten-year period.  The Board recognized, though, that the Supreme Court had clarified the rules after the judge's decision. The Court held that the ten-year "look-back" period for determining an immigrant's presence in the United States does not end on the service date of a *defective* "notice to appear" that fails to

include the date and time of a removal hearing. *Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018). Because Singh's notice contained this defect, its service date (October 30, 2009) could not qualify as the end date from which to measure the look-back period. Yet the Board cited our caselaw holding that service of a second notice with the hearing date (like Singh's notice from November 17, 2009) fixes this problem and triggers that ten-year period. *Garcia-Romo v. Barr*, 940 F.3d 192, 201 (6th Cir. 2019). And the Board concluded that Singh had not shown his continuous presence in the United States between November 1999 and November 2009.

Alternatively, the Board held that Singh failed to establish that his mother or children would suffer extreme hardship. The Board determined that Singh did not substantiate his claims that his mother or daughter had health problems. And, according to the Board, while his son suffered from a walking abnormality, Singh failed to show that he could not receive adequate care in India. The Board next noted that Singh had not shown financial hardship because he did not establish that he would be unable to find work in India. The Board also concluded that the children's reduced educational options in India did not suffice to establish hardship. Lastly, while Singh's mother and children would surely suffer emotional distress, the Board found that this distress did not rise above what would normally be expected from the removal of an immigrant with close relatives in the country.

In his petition for review with this court, Singh raises two claims. He argues that the Board misapplied the cancellation-of-removal statute to the facts of his case. And he argues that the immigration judge's alleged bias violated due process. We take those claims in turn.

## II. Statutory Claim

The cancellation-of-removal statute allows the Attorney General to cancel the removal of an immigrant if the immigrant satisfies four eligibility requirements:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
>
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). Since the statute says that the Attorney General "may" grant relief if the applicant meets these four requirements, it gives the Attorney General residual "discretion to deny relief even if the applicant" does so. *Galicia Del Valle v. Holder*, 343 F. App'x 45, 51 (6th Cir. 2009).

In this case, Singh argues that the Board denied relief by misapplying the continuous-presence and hardship requirements. We opt to resolve the case on Singh's hardship argument alone. His continuous-presence argument implicates an issue pending before the Supreme Court. Another part of the cancellation-of-removal statute automatically ends the ten-year look-back period for continuous presence when an immigrant is "served a notice to appear" (as Singh was on October 30, 2009). 8 U.S.C. § 1229b(d)(1). The Court will soon decide whether we correctly held that a second notice containing the date and time of a hearing (like Singh's notice weeks later) can trigger the ten-year period of continuous presence when the first notice wrongly omits that information. *See Niz-Chavez v. Barr*, __ S. Ct. __, 2020 WL 3038288 (U.S. June 8, 2020) (mem.). Yet the Court's decision will not affect the outcome of Singh's case. Section 1229b(b)(1)'s elements are "conjunctive," so Singh must meet all four to be eligible for relief. *See Aburto-Rocha v. Mukasey*, 535 F.3d 500, 502 (6th Cir. 2008). We thus may uphold the Board's decision based on Singh's inability to establish any of the eligibility requirements. That is the proper course in this case. Although we conclude that we now have jurisdiction to consider Singh's hardship argument, it nevertheless fails on its merits.

## A. Jurisdiction

Congress has given circuit courts the jurisdiction to review a "final order of removal." 8 U.S.C. § 1252(a)(1). In § 1252(a)(2), however, it has deprived them of jurisdiction to review certain decisions underlying that order. This case concerns the interaction between two of those jurisdictional limits and a "safe harbor" to the limits that preserves our ability to review certain issues. The first limit: We lack jurisdiction to review "any judgment regarding the granting of

relief under" the cancellation-of-removal statute (§ 1229b). *Id.* § 1252(a)(2)(B)(i). The second limit: We lack jurisdiction to review "any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]" *Id.* § 1252(a)(2)(B)(ii). (Because the Board acts as the Attorney General's designee, *Valenzuela-Alcantar v. INS*, 309 F.3d 946, 949 (6th Cir. 2002), these limits apply to the Board's decisions.) The safe harbor: Congress has told courts not to construe these limits "as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D).

1

Section 1252(a)(2)'s dichotomy shows that our jurisdiction turns on the type of issue that an immigrant raises. *See Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011). We thus start with a refresher on the four kinds of issues that appellate courts commonly confront. Sometimes, appellate courts are presented with a "purely legal" issue (e.g., what do the words of the immigration statute mean?). *U.S. Bank Nat'l Ass'n ex rel. CWCapital Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 965 (2018). They typically review these legal issues de novo. *See id.* Other times, appellate courts are presented with a "purely factual" issue (e.g., how long has an immigrant lived in this country?). *See id.* at 965–66. They typically review these factual issues for clear error. *See id.* at 966. Still other times, appellate courts must consider "the application of a legal standard to settled facts," an issue they have come to call a mixed question of law and fact (e.g., do the immigrant's settled facts meet the legal test for equitable tolling?). *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068–69 (2020). Courts follow a case-by-case approach when choosing a standard of review for mixed questions. If a question is more fact intensive, they typically review the question with deference; if it is more legal, they typically review it de novo. *Id.* at 1069. Last but not least, appellate courts sometimes consider an issue that the law leaves to the discretion of an agency (e.g., did the Board properly exercise its discretion to deny a motion to reopen removal proceedings?). *See Kucana v. Holder*, 558 U.S. 233, 242 (2010). They typically review these issues for an abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 558 (1988).

How does § 1252(a)(2) treat these four types of common issues? It gives courts jurisdiction to review two of them but deprives courts of jurisdiction to review the other two.

Start with the reviewable ones: Section 1252(a)(2)(D) allows courts to consider purely legal questions and mixed questions of law and fact. It tells courts that they may review the "constitutional claims" or other "questions of law" that an immigrant raises in a petition for review. The scope of this jurisdictional grant depends on the meaning of its key phrase: "questions of law." That phrase obviously covers "purely legal" questions, including, for example, whether the Board properly interpreted a statute's text. *Ettienne*, 659 F.3d at 517–18. And, as the Supreme Court recently held, it covers mixed questions of law and fact. *Guerrero-Lasprilla*, 140 S. Ct. at 1068–69; *see Audi v. Barr*, __ F. App'x __, 2020 WL 7419597, at *3–5 (6th Cir. Dec. 18, 2020). In *Guerrero-Lasprilla*, the Board found that the immigrants' undisputed facts did not meet the undisputed due-diligence standard for equitable tolling in this immigration context. *See* 140 S. Ct. at 1067–68. The Court recognized that the Board's ultimate due-diligence conclusion (based on its "application of a legal standard to undisputed or established facts") was a mixed question of law and fact. *Id.* at 1068–69. It then held that those types of questions are "questions of law" subject to review under § 1252(a)(2)(D). *Id.* at 1068–72. The Court reasoned, among other things, that a contrary holding would eliminate judicial review over "any Board decision applying a properly stated legal standard, irrespective of how mistaken that application might be." *Id.* at 1073.

Turn to the nonreviewable issues: The statute bars us from reviewing discretionary or factual issues. To begin with, § 1252(a)(2)(B)(ii) expressly precludes our review of any issue left to the Board's discretion. This limit covers, for example, a challenge to the Board's final decision that an immigrant is not entitled to cancellation of removal as a discretionary matter even if the immigrant meets all four eligibility factors. *Bernardino Murillo v. Barr*, 795 F. App'x 437, 441 (6th Cir. 2019). In addition, the statute "forbid[s] appeals of factual determinations[.]" *Guerrero-Lasprilla*, 140 S. Ct. at 1073. That is because § 1252(a)(2)(B)(i) broadly restricts our review of "any judgment regarding the granting of relief under" the cancellation-of-removal statute. And unlike for questions of law, this jurisdictional limit lacks a "safe harbor" for questions of fact.

Given that the statute makes the distinction between these different types of issues critical, how should courts go about deciding whether an immigrant raises a reviewable or nonreviewable issue?  Our cases instruct us to look at the *substance* of the immigrant's claim, not the *name* the immigrant places on it.  An immigrant cannot avoid a jurisdictional limit by "labeling" a Board's discretionary or factual finding as a ruling on a legal or mixed question. *Rios-Rios v. Barr*, 787 F. App'x 324, 326 (6th Cir. 2019).  "If a claim 'amounts to nothing more than a challenge to the [agency's] discretionary and fact-finding exercises cloaked as a question of law,' we have no jurisdiction." *Id.* (quoting *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009)).

2

With this general background complete, we turn to the issues that courts may review in this specific hardship context.  The extremes are obvious.  On one hand, courts have jurisdiction if an immigrant raises a *purely legal* claim, such as a claim that the Board misread the phrase "exceptional and extremely unusual hardship."  8 U.S.C. § 1229b(b)(1)(D); *Galeano-Romero v. Barr*, 968 F.3d 1176, 1184 (10th Cir. 2020).  On the other, courts lack jurisdiction if an immigrant raises a *purely factual* claim, such as a claim that the immigration judge wrongly found that a relative did not have a certain health condition. *See Guerrero-Lasprilla*, 140 S. Ct. at 1073.

That leaves a claim challenging the Board's ultimate conclusion that the given set of facts found by the immigration judge did not rise to the level required by the Board's legal test for "exceptional and extremely unusual hardship."  Does this application of a legal test to a given set of facts qualify as a mixed question reviewable under § 1252(a)(2)(D)?  Or does this hardship conclusion qualify as a discretionary decision left to the Board under § 1252(a)(2)(B)?

Our cases have traditionally described the Board's hardship decision as a "discretionary" call that falls outside our jurisdiction. *Calzadilla-Sanchez v. Barr*, 796 F. App'x 891, 896 (6th Cir. 2020) (quoting *Ximon-Rosales v. Holder*, 596 F. App'x 486, 487 (6th Cir. 2015) (per curiam)); *see Galindo-Munoz v. Barr*, 799 F. App'x 905, 910 (6th Cir. 2020); *Quevedo v. Barr*, 766 F. App'x 345, 348–49 (6th Cir. 2019); *Garcia-Morales v. Holder*, 379 F. App'x 431,

434 (6th Cir. 2010) (per curiam); *Sanic v. Holder*, 343 F. App'x 62, 70–71 (6th Cir. 2009); *Abdul v. Holder*, 326 F. App'x 344, 346 (6th Cir. 2009); *Hermez v. Gonzales*, 227 F. App'x 441, 443–44, 443 n.1 (6th Cir. 2007). Many other courts likewise have noted "that such hardship determinations are discretionary judgments and therefore . . . may not be reviewed." *De La Vega v. Gonzales*, 436 F.3d 141, 144 (2d Cir. 2006); *see Hernandez-Morales v. Att'y Gen.*, 977 F.3d 247, 249 (3d Cir. 2020); *Rueda v. Ashcroft*, 380 F.3d 831, 831 (5th Cir. 2004) (per curiam); *Meraz-Reyes v. Gonzales*, 436 F.3d 842, 843 (8th Cir. 2006) (per curiam); *Mendez-Castro v. Mukasey*, 552 F.3d 975, 978–79 (9th Cir. 2009); *Galeano-Romero*, 968 F.3d at 1183–84; *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1222 (11th Cir. 2006).

But we have yet to address this issue after the Supreme Court's *Guerrero-Lasprilla* decision, and most out-of-circuit cases predate its holding that we may review mixed questions. Should *Guerrero-Lasprilla* cause us to reassess our jurisdiction? Two circuit courts do not think so. The Tenth Circuit recently held that "the determination of whether the requisite hardship exists is discretionary because there is no algorithm for determining when a hardship is exceptional and extremely unusual." *Galeano-Romero*, 968 F.3d at 1183 (internal quotation marks and alterations omitted). The Third Circuit also reasoned that a "disagreement about weighing hardship factors is a discretionary judgment call, not a legal question." *Hernandez-Morales*, 977 F.3d at 249. Yet the Eleventh Circuit recently overruled its caselaw in a related context and rejected its prior view that a hardship finding is discretionary. *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1278 (11th Cir. 2020) (en banc); *cf. Gitau v. Sessions*, 878 F.3d 429, 433–34 (1st Cir. 2017).

With respect to our colleagues on the Third and Tenth Circuits, we see things more like the Eleventh Circuit. We hold that we have jurisdiction to review the Board's ultimate hardship conclusion after *Guerrero-Lasprilla*. The Board's conclusion resolves a mixed question about whether the facts found by the immigration judge rise to the level of hardship required by the legal test. It does not resolve a discretionary question. We reach this holding for four reasons.

*First*, consider the statutory text. What language usually signals Congress's decision to give discretion to a district court or agency? Most commonly, a statute will tell a court or agency that it "may" take an action. *See, e.g.*, 8 U.S.C. § 1231(b)(2)(C); 17 U.S.C. § 505; 18 U.S.C.

§ 3582(c)(1)(A). As the Supreme Court has observed, "[t]he word 'may' clearly connotes discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994); *see Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 346 (2005); *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). Alternatively, a statute might signal discretion more expressly by noting that a district court or agency has "discretion" to take the action. *See, e.g.*, 8 U.S.C. §§ 1158(b)(2)(A)(v), 1255(j)(2); 42 U.S.C. § 1988(b). Or a statute might say that a court or agency may take an action if the "court finds" or the "agency finds" a certain thing, "emphasiz[ing] the fact that the determination is for the district court [or agency] to make[.]" *Pierce*, 487 U.S. at 559.

Does the cancellation-of-removal statute signal that the Board has discretion over the hardship factor in these ways? To recap: It says that the "Attorney General may cancel removal of . . . an alien . . . if the alien" establishes four requirements, including "that removal would result in exceptional and extremely unusual hardship to" a qualifying relative. 8 U.S.C. § 1229b(b)(1)(D). Nothing in this text suggests that the Board (as the Attorney General's proxy) has discretion to decide whether hardship exists. To be sure, the statute does use the verb "may." But one must distinguish the Board's final discretionary decision whether *to grant cancellation of removal* (a decision that falls within § 1252(a)(2)(B)) from its earlier eligibility decision whether *the immigrant has shown hardship* (a decision that falls within § 1252(a)(2)(D)). *Contra Galeano-Romero*, 968 F.3d at 1182–84 (asserting that permitting judicial review of the hardship determination would render subsection (B) "a nullity"). The statute's use of the verb "may" makes the final decision discretionary, so the Board may deny relief even if an immigrant proves all four eligibility factors. *See Bernardino Murillo*, 795 F. App'x at 441. But the statute does not use the word "may" when delineating the eligibility requirements. It does not say, for example, that the Attorney General "may" find the required hardship. Nor does it say that this hardship finding is in the "Attorney General's sole discretion." *Cf.* 8 U.S.C. § 1229b(b)(2)(D). Simply put, the plain text does not leave the hardship decision (as compared to the final cancellation-of-removal decision) to agency "discretion."

Indeed, the Board's own precedent treats this hardship decision as a legal question, not a discretionary one. It has characterized mixed questions ("whether the underlying facts found by the Immigration Judge meet the legal requirements" in a statute) as "legal" issues. *Matter of*

*Z-Z-O-*, 26 I. & N. Dec. 586, 591 (B.I.A. 2015). And it has treated the hardship decision as such a mixed question involving the "application of the pertinent legal standards" to the facts found by the immigration judge. *Matter of Gamero*, 25 I. & N. Dec. 164, 165 (B.I.A. 2010).

*Second*, consider the statutory structure. Section 1229b(b)(1) lists four eligibility requirements. Would anyone say that the Board has discretion to decide whether an immigrant has been in this country for the required ten years? 8 U.S.C. § 1229b(b)(1)(A). Or to decide whether the immigrant has been convicted of a disqualifying crime? *Id.* § 1229b(b)(1)(C). No, these requirements do not fall within the Board's discretion. *See Patel*, 971 F.3d at 1277; *Mendez v. Holder*, 566 F.3d 316, 320 (2d Cir. 2009) (per curiam). Why should the "hardship" requirement be different? As the Eleventh Circuit recently held: "Eligibility determinations— both those that we have previously deemed 'discretionary' and those that we have deemed 'non-discretionary'—involve the same decisional process: applying the law to a set of facts." *Patel*, 971 F.3d at 1278. And "qualitative standards such as 'good moral character' or 'exceptional and extremely unusual hardship' are not in themselves discretionary decisions." *Id.*

More broadly, compare the hardship element in this statute to the hardship element in the waiver-of-inadmissibility statute. The latter indicates that the Attorney General has discretion to waive inadmissibility "if it is established *to the satisfaction of the Attorney General* that the refusal of admission to the United States of such immigrant alien would result in extreme hardship" to the immigrant or certain relatives. 8 U.S.C. § 1182(i) (emphasis added). Perhaps the highlighted text stating that the hardship must be proved to the Attorney General's "satisfaction" gives the Attorney General discretion over the finding. *Addo v. Mukasey*, 267 F. App'x 442, 448–49 (6th Cir. 2008); *cf. Pierce*, 487 U.S. at 559. But Congress placed no similar text in the cancellation-of-removal statute. And courts presume that Congress acts intentionally when it uses different language across similar provisions. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353–54 (2013).

The Tenth Circuit nevertheless singled out the "hardship" factor for unique treatment on the ground that it is more subjective than the other factors. *See Galeano-Romero*, 968 F.3d at 1183; *see also Hernandez-Morales*, 977 F.3d at 249. True enough. But the word "hardship" is not so amorphous as to turn this factor into a standardless discretionary call under the

Administrative Procedure Act. *Cf. Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370–72 (2018). Congress commonly uses similar phrases. The bankruptcy laws, for example, prohibit a debtor from obtaining a discharge of certain student-loan debts unless the debts impose an "undue hardship" on the debtor. 11 U.S.C. § 523(a)(8). Would anyone say that whether undue hardship exists is so subjective as to make it a discretionary call for the bankruptcy court? The courts have not treated the question that way. They have viewed it as a mixed question of law and fact (whether the debtor's circumstances rise to the level of the required hardship) subject to de novo review. *See, e.g.*, *Barrett v. Educ. Credit Mgmt. Corp.* (*In re Barrett*), 487 F.3d 353, 358–59 (6th Cir. 2007); *Long v. Educ. Credit Mgmt. Corp.* (*In re Long*), 322 F.3d 549, 553 (8th Cir. 2003) (collecting cases).

*Third*, consider the statutory history. The evolution of the cancellation-of-removal statute shows that our treatment of the hardship decision as discretionary may have arisen by accident: We seemingly overlooked a change in the text. Before 1996, "cancellation of removal" was called "suspension of deportation." The earlier statute allowed the Attorney General to suspend an immigrant's deportation if, among other things, the immigrant had been in this country for a certain period, had good moral character, and was "a person whose deportation would, *in the opinion of the Attorney General*, result in extreme hardship to the" immigrant or relatives. 8 U.S.C. § 1254(a)(1) (1994) (emphasis added). This text left the hardship factor (in contrast to the other eligibility factors) to the Attorney General's opinion. We treated it as discretionary for that reason: because "the language of the statute expressly commit[ted] the 'extreme hardship' determination to 'the opinion of the Attorney General.'" *Valenzuela-Alcantar*, 309 F.3d at 949 (citation omitted).

Yet this text did not carry over to the current cancellation-of-removal statute. When requiring "exceptional and extremely unusual hardship," a 1996 amendment eliminated the phrase "in the opinion of the Attorney General." *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-594 (adopting 8 U.S.C. § 1229b(b)(1)). We nevertheless continued to treat the decision as discretionary without acknowledging this important textual change. *See Hermez*, 227 F. App'x at 443–44, 443 n.1. This was in error.

*Fourth*, consider our precedent. Do our prior cases nevertheless bind us on this question whether the Board's hardship finding resolves a mixed question or a discretionary one? We do not think so. To begin with, the distinction between mixed and discretionary questions did not affect the outcome of any of those cases. *See Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019). Before *Guerrero-Lasprilla*, our cases held that we lacked jurisdiction not just over discretionary questions but also over mixed questions. *See Khozhaynova v. Holder*, 641 F.3d 187, 192 (6th Cir. 2011). So whether we treated the Board's hardship finding as a mixed question or as a discretionary one did not much matter: We lacked jurisdiction either way.

In addition, although our cases labeled the hardship conclusion as discretionary, they rested on logic treating the conclusion as resolving a mixed question. We said, for example, that we lacked jurisdiction over the hardship conclusion because an immigrant's challenge was merely "a challenge to the application of an accepted standard to a particular set of facts" (the definition of a mixed question). *Reyes v. Holder*, 410 F. App'x 935, 938 (6th Cir. 2011). We likewise said that as long as the Board "articulated the proper standard," we could not review its application of the standard to the facts. *Ettienne*, 659 F.3d at 519. Yet *Guerrero-Lasprilla* expressed concern with this very rule—one that "would forbid review of any Board decision applying a properly stated legal standard, irrespective of how mistaken that application might be." 140 S. Ct. at 1073. And the application of the due-diligence standard in that case is no less subjective than the application of the hardship standard in this one. *See id.* at 1067–68.

The Tenth Circuit nevertheless distinguished *Guerrero-Lasprilla* because it implicated the jurisdictional restrictions in § 1252(a)(2)(C) for removal orders that are based on an immigrant's prior crimes, not the jurisdictional restrictions in § 1252(a)(2)(B) that are relevant to this case. *See Galeano-Romero*, 968 F.3d at 1184 n.9. Section 1252(a)(2)(C) (not § 1252(a)(2)(B)) would have barred the immigrants in *Guerrero-Lasprilla* from seeking judicial review if the "safe harbor" for questions of law in § 1252(a)(2)(D) did not apply. *See* 140 S. Ct. at 1067. We fail to see why this distinction matters. The safe harbor at issue in *Guerrero-Lasprilla* applies whether an immigrant's appeal is subject to the limits in § 1252(a)(2)(B) or (C). Its very terms state that "[n]othing in *subparagraph (B) or (C)*" shall preclude judicial review of "questions of law[.]" 8 U.S.C. § 1252(a)(2)(D) (emphasis added). Contrary to the Tenth

Circuit's suggestion, therefore, *Guerrero-Lasprilla* did "address the particular dynamic involved here—the interaction between one subsection that prevents review over certain Board decisions and another subsection that allows for judicial review over questions of law[.]" *Galeano-Romero*, 968 F.3d at 1184 n.9. And we do not see how the phrase "questions of law" in § 1252(a)(2)(D) can cover mixed questions for purposes of § 1252(a)(2)(C), but suddenly change meaning not to cover mixed questions for purposes of § 1252(a)(2)(B). Simply put, we must follow *Guerrero-Lasprilla* here.

In sum, the statutory text, structure, and history convince us that the Board's ultimate hardship conclusion is the type of mixed question that we have jurisdiction to review after *Guerrero-Lasprilla*. And because our cases do not foreclose that reading, we proceed to the merits.

## B. Merits

Once we treat the ultimate hardship conclusion as a mixed question that falls within our jurisdiction, what changes? Perhaps not much. Yes, we have jurisdiction to review the Board's hardship conclusion. But our review of the conclusion likely should be deferential. And we still cannot review any of the factual findings underlying it.

The nature of this mixed question likely signals deference to the Board. *See Guerrero-Lasprilla*, 140 S. Ct. at 1069. "Mixed questions are not all alike." *U.S. Bank*, 138 S. Ct. at 967. The Supreme Court has told us to apply de novo review to mixed questions that require courts to "expound on the law," and it has told us to apply deferential review to mixed questions that "immerse courts in case-specific factual issues[.]" *Id.* To give an example of a case-specific mixed question, the Court applied clear-error review to a bankruptcy court's decision that a transaction was at arm's length when considering the facts as a "whole." *See id.* at 967–69. To give another example, the Court applied the same deferential standard to a district court's conclusion that a country qualified as a child's habitual residence under a totality-of-the-circumstances test. *See Monasky v. Taglieri*, 140 S. Ct. 719, 730 (2020). The question in this case is equally fact-bound. The Board's governing test requires a "'cumulative' analysis" of the "totality" of the evidence, just like the tests from *U.S. Bank* and *Monasky*. *In re Gonzalez*

*Recinas*, 23 I. & N. Dec. 467, 472–73 (B.I.A. 2002); *see Martinez v. Sessions*, 741 F. App'x 322, 323 (6th Cir. 2018).

Yet what specific standard of review should govern? Should it be the generic clear-error standard that appellate courts routinely apply in this mixed-question context? *See Monasky*, 140 S. Ct. at 730. Should it be the substantial-evidence test that courts routinely apply to agency conclusions under the Administrative Procedure Act? *See* 5 U.S.C. § 706(2)(E); *see also, e.g.*, *Mingming Li v. Lynch*, 656 F. App'x 694, 697 n.2 (5th Cir. 2016). Or should it be the test that applies to factual findings in this specific immigration context? 8 U.S.C. § 1252(b)(4)(B).

Ultimately, we need not choose the proper standard of review in this case. No matter the standard, the Board correctly held that Singh failed to establish the required "exceptional and extremely unusual hardship" to his family. 8 U.S.C. § 1229b(b)(1)(D). Singh does not dispute the Board's legal test for this hardship element. The Board's precedent requires it to consider all of the circumstances, including the "ages, health, and circumstances" of qualifying relatives. *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (B.I.A. 2001); *see In re Andazola-Rivas*, 23 I. & N. Dec. 319, 321–24 (B.I.A. 2002). Nor does Singh dispute the Board's conclusion that his mother's and children's health conditions were insufficiently serious to create the required hardship. *See Monreal-Aguinaga*, 23 I. & N. Dec. at 63. Instead, Singh claims *only* that the Board erred in finding that he did not establish educational hardship for his children. Yet the Board's precedent holds that diminished educational options alone do not establish the required hardship. *Andazola-Rivas*, 23 I. & N. Dec. at 323. And the immigration judge found as a fact that Singh's evidence showed no more than those diminished options. He, for example, did not show that his "children would be deprived of all schooling or of an opportunity to obtain any education." *Id.* We lack jurisdiction to review such a factual finding. *Guerrero-Lasprilla*, 140 S. Ct. at 1073. And given that finding, the Board did not err in its application of the hardship test.

III. Constitutional Claim

That leaves Singh's constitutional claim. He argues that the immigration judge violated the Due Process Clause by issuing a second notice that corrected the defective notice to appear

lacking the date and time of his hearing.  Because a "notice to appear" is like an indictment, Singh's argument goes, the immigration judge's "correcting" that notice transformed the judge from neutral arbitrator to biased prosecutor.  Section 1252(a)'s jurisdictional limits do not preclude us from reviewing "constitutional claims" like this one.  8 U.S.C. § 1252(a)(2)(D).  But we cannot review this due-process argument for another reason: Singh did not exhaust it.

Congress authorizes courts to review a "final order of removal only if" an "alien has exhausted all administrative remedies available to the alien as of right[.]"  *Id.* § 1252(d)(1).  The Supreme Court has held that similar statutory language requires "proper" exhaustion before an agency.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Likewise, we have noted that we may review only those claims "properly" presented to the Board.  *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).  To raise a claim *properly*, a party generally must comply with the agency's procedural rules for how to raise it.  *See Woodford*, 548 U.S. at 90–91; *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 750–51 (6th Cir. 2019).  In this context, the procedural rules require a party to identify every legal or factual issue that the party seeks to raise with the Board in the notice of appeal of the immigration judge's decision.  8 C.F.R. § 1003.3(b).  To satisfy § 1252(d)(1)'s exhaustion requirement, therefore, immigrants must present the specific issue that they seek to raise in court in the notice of appeal to the Board (and potentially in a brief with the Board if they opt to file one).  *See Cuevas-Nuno v. Barr*, 969 F.3d 331, 334–35, 334 n.3 (6th Cir. 2020); *Tomaszczuk v. Whitaker*, 909 F.3d 159, 167 (6th Cir. 2018); *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009).

This issue-exhaustion mandate poses a serious problem for Singh.  He did not assert any due-process claim in his notice of appeal or brief with the Board, let alone the specific due-process claim that he now makes in court.  This case thus seems like a straightforward one involving an immigrant's failure to exhaust.

Or perhaps not.  We have suggested in dictum that an immigrant's "due process challenge generally does not require exhaustion," presumably because the Board "lacks authority to review constitutional challenges" to the statutes and regulations that it administers.  *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).  Does *Sterkaj*'s potential exhaustion exception for constitutional claims save Singh's due-process argument?  No.  *Sterkaj*'s dictum might be

impliedly referring to administrative law's well-known exhaustion exception for constitutional claims that an agency cannot consider. *See, e.g.*, *McCarthy v. Madigan*, 503 U.S. 140, 147–48 (1992). Yet that exception generally covers *judicially created* exhaustion mandates, which permit judicially created exceptions. Here, however, a statute compels exhaustion. 8 U.S.C. § 1252(d)(1). And the Supreme Court recently reminded lower courts that "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion" to create judicial exceptions. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

Yet we need not decide whether *Sterkaj*'s dictum survives *Ross*. This exhaustion exception for constitutional claims generally applies only if the agency cannot consider the claim. *See Island Creek*, 937 F.3d at 753. Most due-process claims do not challenge a statute or regulation (the type of claim that the Board cannot consider); they challenge the procedure by which an immigration judge resolved the case (the type of claim that the Board can consider). In *Sterkaj*, for example, we held that an immigrant should have exhausted his due-process claim because the Board could have addressed it, and immigrants generally "must raise correctable procedural errors" with the Board. 439 F.3d at 279. After *Sterkaj*, we have repeatedly held that a failure to raise a correctable due-process claim with the Board precludes our review. *See, e.g.*, *Bravo-Domingo v. Barr*, 806 F. App'x 443, 450 (6th Cir. 2020); *Bernardino Murillo*, 795 F. App'x at 440–41; *Seye v. Barr*, 768 F. App'x 381, 385 (6th Cir. 2019); *Tomaszczuk*, 909 F.3d at 167; *Viuda De Mejia v. Sessions*, 691 F. App'x 245, 249 (6th Cir. 2017); *Gaye v. Lynch*, 788 F.3d 519, 527–28 (6th Cir. 2015); *Beltran v. Holder*, 592 F. App'x 472, 473 (6th Cir. 2015). Here, moreover, Singh makes no argument that his claim falls outside this rule. We have already held that immigrants should raise claims of agency "bias" with the Board. *Tomaszczuk*, 909 F.3d at 167. So Singh needed to exhaust his due-process claim and we may not review it.

We deny Singh's petition for review in part and dismiss it in part.