NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0224n.06

No. 22-3985

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 12, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JOSE ANTONIO GUZMAN HERRERA, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF |
| v. | ) | AN ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) | |
| Respondent. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, McKEAGUE, and MATHIS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Petitioner Jose Antonio Guzman Herrera seeks review of a final order from the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision denying his application for cancellation of removal. Guzman Herrera argues that the BIA erroneously determined that he had not established that his removal would result in exceptional and extremely unusual hardship to his U.S. citizen children. For the reasons that follow, we **DENY** the petition for review.

**I. BACKGROUND**

Guzman Herrera is a native and citizen of Mexico. Administrative Record (A.R.) at 257 (Appl. for Cancellation of Removal at 3). Guzman Herrera first entered the United States in February 1998, when he was fifteen years old, by crossing the U.S.-Mexico border without inspection. A.R. at 259 (Appl. for Cancellation of Removal at 5). In July 2001, he departed the United States after receiving a grant of voluntary departure. *Id.* Guzman Herrera returned to the United States later that month, again by crossing the border without inspection. *Id.*

After reentering the United States, Guzman Herrera married a Mexican citizen and had four children, all U.S. citizens, born in 2004, 2005, 2009, and 2013. A.R. at 257, 259, 261–62 (Appl. for Cancellation of Removal at 3, 5, 7–8). In 2017, Guzman Herrera and his wife divorced. A.R. at 227–35 (Divorce J. at 1–9). Guzman Herrera and his ex-wife have joint legal custody of their children, who spend equal time at each parent's home. A.R. at 228, 230 (Divorce J. at 2, 4); A.R. at 93 (Hr'g Tr. at 20). Guzman Herrera has been continuously employed as a supervisor at the same workplace since April 2002. A.R. at 260 (Appl. for Cancellation of Removal at 6).

In May 2016, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), placing Guzman Herrera in removal proceedings based on his presence in the United States without having been admitted or paroled, in violation of § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). A.R. at 341 (NTA at 1); *see also* 8 U.S.C. § 1182(a)(6)(A)(i). Guzman Herrera conceded removability and applied for cancellation of removal and voluntary departure. A.R. at 80 (Hr'g Tr. at 7); A.R. at 257 (Appl. for Cancellation of Removal at 3); A.R. at 105 (Hr'g Tr. at 32).

At the merits hearing on his applications, Guzman Herrera testified that he has a good relationship with his children and tries to spend time with them and support them, especially in their education and extracurricular activities. A.R. at 98–100 (Hr'g Tr. at 25–27). He testified that his children feel unsupported by their mother and that his two eldest sons expressed discomfort at their living situation at their mother's home, because her boyfriend also lives with them. A.R. at 100–102 (Hr'g Tr. at 27–29). He also testified that "sometimes [his ex-wife] doesn't send" the children to school. A.R. at 109 (Hr'g Tr. at 36). His two eldest sons and his daughter see psychologists, which Guzman Herrera testified that the children's mother views as "stupidity."

A.R. at 102–03 (Hr'g Tr. at 29–30). His two eldest sons both have depression and anxiety. A.R. at 103–04 (Hr'g Tr. at 30–31). Guzman Herrera testified that if he were to be removed to Mexico, his children's mother would not allow the children to go with him. A.R. at 104 (Hr'g Tr. at 31). He was unsure whether she would even allow the children to visit him "because she does not want to have a good relationship with me for the good of the children." *Id.* He expressed concern that his children would suffer financially due to the loss of child-support payments as well as emotionally due to the loss of his support. A.R. at 105 (Hr'g Tr. at 32).

Guzman Herrera's eldest son, Jose Antonio Jr., also testified. A.R. at 138 (Hr'g Tr. at 65). He described Guzman Herrera as a caring and supportive father who is very involved in his children's lives and cares about their education. A.R. at 145 (Hr'g Tr. at 72). Jose Antonio Jr. testified that his mother's boyfriend was "a big problem" because he "doesn't pay attention" to Guzman Herrera's four children and is solely interested in the child that he shares with Jose Antonio Jr.'s mother. A.R. at 147 (Hr'g Tr. at 74). Jose Antonio Jr. expressed that he and his siblings don't "get along too much" with their mother because "she doesn't support" them. *Id.* He also affirmed that they miss school sometimes while staying with their mother, which does not happen when they stay with Guzman Herrera. A.R. at 149 (Hr'g Tr. at 76). He "always [has] a good time" staying with Guzman Herrera and has no issues with him. A.R. at 148 (Hr'g Tr. at 75). Jose Antonio Jr. felt that his depression was caused by the possibility of his father having to return to Mexico and testified that "[i]t would affect me a lot" because Guzman Herrera has "been the one that is there for us." *Id.* His depression has impacted his ability to sleep because he is unable to stop thinking about his father being removed. A.R. at 154 (Hr'g Tr. at 81). Jose Antonio Jr. testified that his mother would not let him or his siblings go to Mexico to visit their father. *Id.*

3

at 150 (Hr'g Tr. at 77). He said that sometimes one of his brothers "just cries" because he is "thinking about what if dad goes back to his country." A.R. at 152 (Hr'g Tr. at 79).

The parties agreed to proffer testimony from Guzman Herrera's second eldest son, which would be consistent with Jose Antonio Jr.'s testimony. A.R. at 167–68 (Hr'g Tr. at 94–95). The parties also agreed on proffers of testimony from Guzman Herrera's friends and coworkers, who would testify that Guzman Herrera was a good and honest person and a hard worker, and that he cares deeply about his family. A.R. at 169–71 (Hr'g Tr. at 96–98).

The IJ denied Guzman Herrera's applications for cancellation of removal and voluntary departure and ordered him removed to Mexico. A.R. at 48 (IJ Order). In denying his application for cancellation of removal, the IJ found that Guzman Herrera did not possess the requisite good moral character for relief and had not demonstrated exceptional and extremely unusual hardship to his U.S. citizen children if he were to be removed from the United States. A.R. at 55–60 (IJ Oral Decision at 3–8). Guzman Herrera appealed the IJ's decision to the BIA. A.R. at 43 (Notice of Appeal at 1). The BIA dismissed Guzman Herrera's appeal, affirming the IJ's decision on the hardship issue alone.[1] A.R. at 3 (BIA Op. at 1). The BIA held that:

> While the respondent's children will undoubtedly suffer some financial and emotional hardship upon the respondent's removal, we agree with the Immigration Judge's determination that the record does not reflect that these hardships will be so unusual or severe when compared with those experienced by other, similarly situated, individuals that they may fairly be characterized as "exceptional and extremely unusual" in the sense intended by Congress.

A.R. at 4 (BIA Op. at 2). Guzman Herrera filed a timely petition for review in this court.

---

[1]The BIA did not discuss the moral character issue, concluding simply that "[w]e agree with the Immigration Judge's decision denying the respondent's application for cancellation of removal, *even if he established the requisite good moral character*." A.R. at 3 (BIA Op. at 1) (emphasis added). Because the BIA did not address the moral character issue, it is beyond the scope of this court's review, and we therefore do not address it.

**II. ANALYSIS**

In order to be eligible for cancellation of removal, an applicant must meet four requirements:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--
>
> (A)  has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B)  has been a person of good moral character during such period;
>
> (C)  has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
>
> (D)  establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).  "[W]e review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).  To the extent that the BIA adopted the IJ's reasoning, we also review the IJ's decision.  *Id.*

There are jurisdictional limits on the scope of our review of the denial of cancellation of removal.  *Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021).  To the extent that Guzman Herrera challenges the BIA's factual findings as erroneous, we lack jurisdiction to review his claim.  *Id.* We may, however, review the BIA's ultimate conclusion regarding whether the established facts establish exceptional and extremely unusual hardship to Guzman Herrera's qualifying relatives. *Id.* at 1154.  We have previously declined to decide which standard of review applies to our review of this question, instead musing that either the clear-error standard or the substantial-evidence test

might be appropriate. *Id.* We again decline to decide that question, because Guzman Herrera's claim fails regardless of which standard we apply.

Guzman Herrera does not dispute the BIA's standard for hardship, which requires an applicant to "provide evidence of harm to his spouse, parent, or child *substantially* beyond that which ordinarily would be expected to result from the alien's deportation." *Araujo-Padilla v. Garland*, 854 F. App'x 646, 649 (6th Cir. 2021) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (BIA 2001)). In analyzing the hardship requirement, the BIA must "consider all of the circumstances, including the 'ages, health, and circumstances' of qualifying relatives." *Singh*, 984 F.3d at 1154 (quoting *Monreal-Aguinaga*, 23 I. & N. Dec. at 63). "[A]ll hardship factors should be considered in the aggregate." *Monreal-Aguinaga*, 23 I. & N. Dec. at 64.

First, Guzman Herrera argues that the IJ erroneously determined that the report of a licensed social worker, Phillip Nienhuis, discussing the eldest children's depression and anxiety was "totally without merit." Pet'r Br. at 9. The IJ, however, simply pointed out that (1) Nienhuis was not qualified to diagnose the children with depression and anxiety and provided no indication of the origins of their diagnosis; and (2) that the report overstated the impact of Guzman Herrera's removal on the children because it assumed a total loss of contact with Guzman Herrera and failed to account for the possibility of "electronic or telephonic contact." A.R. at 58–59 (IJ Oral Decision at 6–7). We lack jurisdiction to review these findings of fact. *Singh*, 984 F.3d at 1149.

Next, Guzman Herrera argues that the IJ "completely disregarded" the testimony of Guzman Herrera and Jose Antonio Jr. regarding the impact of Guzman Herrera's removal on the children. Pet'r Br. at 10. The IJ, however, mentioned both Guzman Herrera's and Jose Antonio Jr.'s testimony and considered it in conjunction with Nienhuis's report, because all of those pieces

of evidence were directed at the emotional hardship that the children would suffer. A.R. at 57 (IJ Oral Decision at 6). There is nothing to suggest that the IJ did not consider their testimony.

Guzman Herrera also argues that "the financial impact [of his removal] was ignored and downplayed." Pet'r Br. at 10. Both the IJ and the BIA, however, acknowledged that there may be some degree of loss of financial support if Guzman Herrera is removed to Mexico. A.R. at 57 (IJ Oral Decision at 6); A.R. at 4 (BIA Op. at 2). To the extent that Guzman Herrera challenges the IJ's factfinding as to financial hardship, we lack jurisdiction to review his argument. *Singh*, 984 F.3d at 1149.

Finally, Guzman Herrera argues that the IJ and the BIA applied the incorrect legal standard by failing to consider the hardship factors cumulatively. Pet'r Br. at 11. The IJ's decision, however, indicated that the factors must be considered in the aggregate, and there is nothing to suggest that the IJ did not do so. A.R. at 57 (IJ Oral Decision at 6). The IJ therefore applied the correct standard in making the hardship determination. And the fact that the IJ mentioned Guzman Herrera and Jose Antonio Jr.'s testimony in the discussion of Nienhuis's report suggests that the IJ did in fact weigh the evidence of hardship in the aggregate. *Id.* The language of the BIA's opinion also suggests that it considered the factors cumulatively. A.R. at 4 (BIA Op. at 2) ("While the respondent's children will undoubtedly suffer some financial and emotional hardship upon the respondent's removal, . . . the record does not reflect that *these* hardships will be so unusual or severe." (emphasis added)). The BIA therefore also applied the correct legal standard.

Guzman Herrera's brief fails to cite to even a single case in which either this court or the BIA has found exceptional and extremely unusual hardship when faced with similar facts. We have, however, previously upheld the BIA's denial of cancellation of removal on the hardship

requirement in similar factual circumstances. *See Araujo-Padilla*, 854 F. App'x at 650–51 (holding that the hardship requirement was not met although petitioner's removal would result in loss of financial support and diminished educational opportunities for his children and petitioner's daughter showed "signs of depression due to his impending removal"). We therefore cannot set aside the IJ's decision that Guzman Herrera is ineligible for cancellation of removal.

### III.  CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.