NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0335n.06

No. 23-3873

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jul 31, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| AUDELIO ARTEMIO DIAZ-ROBLERO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION |
| | ) | |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Audelio Diaz-Roblero unlawfully entered the United States decades ago. After federal immigration authorities initiated removal proceedings against him, he applied for cancellation of removal to remain in the country. This application required him to show that his children would suffer "exceptional and extremely unusual hardship" if the government removed him. 8 U.S.C. § 1229b(b)(1)(D). An immigration judge found no such hardship, and the Board of Immigration Appeals affirmed. Diaz-Roblero now seeks relief in our court. But the immigration judge and Board identified the correct legal standards and reasonably applied them to Diaz-Roblero's family circumstances. So we deny his petition for review.

I

Diaz-Roblero was born in Guatemala in 1983 and spent most of his childhood in that country. He entered the United States without permission in March 1999 when he was just 16

years old. Diaz-Roblero has remained in the United States ever since. He ultimately made his way to Chattanooga, Tennessee, where he operates a successful landscaping business.

After coming to the United States, Diaz-Roblero began a relationship with a Guatemalan woman who was also in the country unlawfully. The couple had four sons together in Chattanooga. At the time of his 2018 hearing, their sons ranged in age from 3 to 14. Diaz-Roblero has a close relationship with his children. He and his partner live together with them, and they share family meals almost every day. Among other typical activities, Diaz-Roblero takes his children to church functions, helps them with their homework, and volunteers at the practices for their sports teams. His landscaping business also provides the family's primary source of income.

In February 2016, Diaz-Roblero pleaded guilty to driving while under the influence of alcohol in a Tennessee state court. The next month, federal immigration officials charged him with being removable as an unlawful entrant and ordered him to appear in removal proceedings. *See* 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A). Diaz-Roblero conceded his removability. But he asked the immigration judge to cancel his removal under 8 U.S.C. § 1229b(b)(1). His cancellation-of-removal application required him to meet four requirements. Three of the requirements looked backward: Diaz-Roblero had to show that he had been present in the United States for ten years; that he had good moral character during that time; and that he had not committed any disqualifying crimes. *Id.* § 1229b(b)(1)(A)–(C). The final requirement looked forward: Diaz-Roblero had to show that his removal would "result in exceptional and extremely unusual hardship" to his children. *Id.* § 1229b(b)(1)(D).

This case turned on the final hardship element. An immigration judge denied Diaz-Roblero's application because he failed to satisfy that element. The judge reached this conclusion based on "[a]ll testimony and evidence of record[.]" Admin. R. (A.R.) 42. But the judge

highlighted several specific factors. She noted that Diaz-Roblero's partner and children would remain in the United States if he moved back to Guatemala. His partner had obtained authorization to work in the United States and held part-time employment cleaning houses. Both Diaz-Roblero and his partner also had several siblings in the Chattanooga area, so she and their sons would have a "large family support system" without him. A.R. 43–44. And none of his children had any medical problems. All also seemed "to be doing very well in school." A.R. 45. Although his 7-year-old son was a "little bit behind with his reading," those struggles had not necessitated "any specialized education program at school." A.R. 78, 98; *see* A.R. 44. According to the immigration judge, these facts resembled those in which the Board had found a lack of hardship in prior cases. The Board of Immigration Appeals agreed and affirmed this conclusion.

II

Diaz-Roblero now challenges this hardship finding in our court. Before reaching the merits, we start with two procedural issues about the nature of our review. To begin with, the Board's one paragraph of reasoning on this hardship element largely incorporated the immigration judge's more fulsome discussion. As a result, our cases teach that we should review the decisions of both the Board and the immigration judge to decide whether Diaz-Roblero's final order of removal contained any errors. *See Sanchez-Robles v. Lynch*, 808 F.3d 688, 691−92 (6th Cir. 2015).

Next, the immigration laws restrict our jurisdiction over this hardship question. *See* 8 U.S.C. § 1252(a)(2)(B), (D). Most notably, we lack jurisdiction to review any of the findings about the historical facts that underlie the immigration judge's hardship conclusion. *See Patel v. Garland*, 596 U.S. 328, 347 (2022); *Singh v. Rosen*, 984 F.3d 1142, 1150, 1155 (6th Cir. 2021). At the same time, we have jurisdiction to review purely legal questions—such as the question whether the Board properly interpreted the phrase "exceptional and extremely unusual hardship."

3

*See Singh*, 984 F.3d at 1149–50. We review these legal questions de novo. *Garcia Zapata v. Garland*, 2022 WL 2070666, at \*2 (6th Cir. June 9, 2022). We also have jurisdiction to review the Board's answer to the question whether the historical facts that the immigration judge found meet the governing "hardship" test—a so-called "mixed" question of law and fact. *See Wilkinson v. Garland*, 601 U.S. 209, 221–22 (2024); *Singh*, 984 F.3d at 1150–54. Because this fact-bound mixed question depends on each case's unique evidentiary record, though, we give deference to the Board's answer. *See Wilkinson*, 601 U.S. at 225; *Singh*, 984 F.3d at 1154.

With these procedural points behind us, we turn to the merits. The cancellation-of-removal statute required Diaz-Roblero to prove that his "removal would result in exceptional and extremely unusual hardship" to his children. 8 U.S.C. § 1229(b)(1)(D). The Board reads this language to require a level of hardship that is "'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 62 (B.I.A. 2001). The Board has recognized that only "very uncommon" fact patterns will meet this test. *Id.* at 59. It has added that the test depends on an applicant's factual circumstances in the "aggregate," including the "ages, health, and circumstances" of all qualifying relatives. *Id.* at 63–64; *see also In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468–69 (B.I.A. 2002); *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 321–24 (B.I.A. 2002).

Diaz-Roblero does not dispute the Board's traditional interpretation, so we may assume its validity here. He instead argues that the immigration judge and Board committed two legal errors because they departed from the traditional legal test in two ways. He also argues that the immigration judge and Board wrongly held that his factual circumstances failed to meet this test. We will consider each argument in turn.

4

*First*, Diaz-Roblero claims that the immigration judge and Board applied the wrong legal standard because they did not engage in the required "cumulative and aggregate analysis" of the hardship factors. Petitioner's Br. 13−14; *see Gonzalez Recinas*, 23 I. & N. Dec. at 472; *Monreal-Aguinaga*, 23 I. & N. Dec. at 64. We have repeatedly rejected similar arguments that the Board failed to consider the totality of the evidence when its opinion proved otherwise. *See Sustaita-Lopez v. Garland*, 2024 WL 509619, at *3 (6th Cir. Feb. 9, 2024); *Garcia Zapata,* 2022 WL 2070666, at *2; *Cano-Morales v. Garland*, 2022 WL 304953, at *4 (6th Cir. Feb. 2, 2022); *Contreras-Sanchez v. Garland*, 2021 WL 2926133, at *3 n.4 (6th Cir. July 12, 2021); *Araujo-Padilla v. Garland*, 854 F. App'x 646, 650 (6th Cir. 2021). The argument fares no better in this case. The Board explained that the immigration judge had properly considered all the hardship evidence in its "*totality*" but had held that this evidence did not rise to the required level. A.R. 3 (emphasis added). The immigration judge's analysis confirms this point. The addendum of governing law that the judge incorporated into her opinion noted that she had to consider all the evidence in the "aggregate," not in isolation. A.R. 42, 51. And the judge noted that she had considered "[a]ll testimony and evidence" when making her hardship determination. A.R. 42.

In response, Diaz-Roblero does not identify any evidence that the judge overlooked. Rather, he makes a technical legal argument. Diaz-Roblero suggests that the words "totality," "cumulative," and "aggregate" create *separate* legal inquiries that immigration judges must undertake independent of each other. We see no basis in language or precedent for this claim. The words are synonyms that refer to the same idea: that immigration judges must consider all the evidence together when determining whether an applicant's facts meet the governing hardship test. So we and the Board have used the words interchangeably. The Board's decision adopting this test used the word "aggregate" in one place, *Monreal-Aguinaga*, 23 I. & N. Dec. at 64, and

"cumulatively" in another, *id.* at 65. Likewise, some of our cases have said that the immigration judge must consider the evidence in the "aggregate." *See, e.g.*, *Saavedra v. Garland*, 2023 WL 8651265, at \*4–6 (6th Cir. Dec. 14, 2023). Others have suggested that the immigration judge must consider the "cumulative hardship" from all the evidence. *See, e.g.*, *Contreras-Sanchez*, 2021 WL 2926133, at \*3 n.4. Still others have upheld agency decisions that considered the "totality" of the facts. *See, e.g.*, *Navarro v. Holder*, 505 F. App'x 441, 447 (6th Cir. 2012). In short, because the Board and immigration judge considered all of the evidence in this case collectively, they did not commit a legal error by failing to refer to each of the three synonyms in their analysis.

*Second*, Diaz-Roblero argues that the immigration judge and Board wrongly required him to prove that it would be "unconscionable" to remove him. Petitioner's Br. 14–15. He correctly recognizes that the Board's precedent has disavowed an "unconscionability" standard on the ground that it sets the bar too high. *Monreal-Aguinaga*, 23 I. & N. Dec. at 60–61. But he points to nothing that suggests the immigration judge or Board applied that standard here. The Board did not even use that word. And the immigration judge's "addendum" recited the Board's governing test almost word for word, noting that an applicant must establish "hardship that is substantially beyond that which would ordinarily be expected to result when a close family member leaves the country." A.R. 51 (citing *Monreal-Aguinaga*, 23 I. & N. Dec. at 59). The immigration judge then expressly recognized that an applicant need *not* show that removal would be unconscionable. *Id.* So neither the Board nor the immigration judge committed this claimed error.

*Third*, and finally, Diaz-Roblero makes passing references to the "mixed question of law and fact" about whether the immigration judge and Board properly applied the governing hardship test to his factual circumstances. Petitioner's Br. 13, 15. But he makes no "sustained argument as to why" the agency unreasonably concluded that the required hardship did not exist when applying

the governing hardship test to Diaz-Roblero's unique facts. *Tomas-Morales v. Garland*, 2022 WL 154343, at \*5 (6th Cir. Jan. 18, 2022). Indeed, Diaz-Roblero does not cite a single piece of record evidence in support of this claim. So he has forfeited this "ultimate question" challenge by failing to adequately raise it. *See id.*

We deny the petition for review.