RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ADRIAN IRINEO GALVEZ-BRAVO,

                        *Petitioner,*

    *v.*

MERRICK B. GARLAND, Attorney General,

                        *Respondent.*

No. 24-3052

─────────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 206 154 327.

Decided and Filed:  October 23, 2024

Before:  SUTTON, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Alicia Jeanine Triche, TRICHE IMMIGRATION APPEALS, Memphis, Tennessee, for Petitioner.  Christopher G. Gieger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge.  Adrian Galvez-Bravo, a native and citizen of Mexico, seeks review of a Board of Immigration Appeals order denying his motion to reopen removal proceedings.  Galvez-Bravo contends that the Board's order ignored his core argument and deviated from other Board decisions.  While we have jurisdiction to review Galvez-Bravo's legal challenges to the Board's order, we conclude that the Board engaged in reasoned decisionmaking in denying his motion.  Accordingly, we deny his petition for review.

**I.**

Galvez-Bravo entered the United States in 1994.  Save for a brief return to Mexico to marry his wife, he has lived in the Memphis area, working as a subcontractor.  The couple has three children, two of whom are U.S. citizens.  Following Galvez-Bravo's brush with the law in 2013, the Department of Homeland Security initiated removal proceedings against him, alleging he was a noncitizen present in the United States without being admitted or paroled.  *See* 8 U.S.C. § 1182(a)(6)(A)(i). After conceding the charge, Galvez-Bravo sought cancellation of removal under § 240A of the Immigration and Nationality Act.  *See id.* § 1229b(b).

The Attorney General "may cancel" the removal of certain noncitizens who are otherwise deportable from the United States.  *See id.* § 1229b.  The Attorney General, in turn, "has delegated this power" to award relief from removal to the Board and immigration judges. *Hernandez v. Garland*, 59 F.4th 762, 766 (6th Cir. 2023); *Valenzuela-Alcantar v. INS*, 309 F.3d 946, 949 (6th Cir. 2002); *see also* 8 C.F.R. §§ 1003.1(a)(1), (d)(3)(ii), 1003.10(a).  Cancellation occurs in two steps. First, the noncitizen must satisfy various eligibility factors set forth in § 240A.  If the noncitizen does so, the agency, at step two, can exercise its discretion to cancel an order of removal.  *See Wilkinson v. Garland*, 601 U.S. 209, 212–13 (2024).

Galvez-Bravo, however, never made it past step one.  As a nonpermanent resident who is otherwise deportable from the United States, he needed to show at the outset that his "removal would result in exceptional and extremely unusual hardship" to one of his two U.S. citizen children.  8 U.S.C. § 1229b(b)(1)(D).  On this front, Galvez-Bravo maintained that he would return to Mexico with his children if removed.  That would deprive them of educational opportunities in the United States and otherwise detrimentally affect their standard of living.  An IJ disagreed with that assessment, as did the Board on appeal. Accordingly, the Board ordered that Galvez-Bravo be removed to Mexico, subject to the IJ's conditions on that removal.

Rather than petitioning to this Court, Galvez-Bravo moved to reopen his removal proceeding on the ground that, in light of new evidence, he could now satisfy the hardship standard.  He pointed to several factual developments, in particular his daughter's recent dyslexia diagnosis, a condition for which she was receiving support through her private school.

According to Galvez-Bravo, he would now go to Mexico alone.  But losing his job in the United States would deprive his daughter as well as her brother, both U.S. citizens, of their current private school learning environment, in addition to inflicting other emotional and financial costs amounting to a sufficiently severe hardship.

The Board declined to reopen Galvez-Bravo's removal proceedings.  After assessing the new evidence, the Board concluded that Galvez-Bravo still had not met the hardship requirement.  Galvez-Bravo in turn petitioned this Court for review of that determination.

## II.

*Jurisdiction*.  Before addressing the merits of Galvez-Bravo's arguments, we pause to confirm our jurisdiction.  Typically, we may review all "final order[s] of removal."  *See* 8 U.S.C. § 1252(a)(1); *see also Kucana v. Holder*, 558 U.S. 233, 253 (2010) (holding that "[a]ction on motions to reopen . . . remain subject to judicial review"); *Madrigal v. Holder*, 572 F.3d 239, 242 (6th Cir. 2009).  With respect to orders regarding cancellation of removal, however, Congress has curtailed our review in certain aspects.  For step one's eligibility inquiry, we maintain jurisdiction to review questions of law and mixed questions of fact and law in the Board's determinations.  *See Wilkinson*, 601 U.S. at 212 (recognizing that courts can review whether the Board correctly applied the undisputed or established facts to assess the hardship standard).  But we may not review the agency's factual findings, which are made by the IJ and reviewed by the Board for clear error.  *See* 8 U.S.C. § 1252(a)(2)(B)(i); 8 C.F.R. § 1003.1(d)(3)(i); *Patel v. Garland*, 596 U.S. 328, 331, 338–40 (2022).  Contrast this jurisdictional limitation regarding the Board's eligibility determination with other settings, like the review of the denial of asylum, where we consider agency factfinding under a deferential "substantial evidence" standard.  *See* 8 U.S.C. § 1252(b)(4)(B); *Vasquez-Rivera v. Garland*, 96 F.4th 903, 907 (6th Cir. 2024).  Likewise, as to step two, we may not review the agency's exercise of discretion to cancel an order of removal.  *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Wilkinson*, 601 U.S. at 225 n.4.

With this framework in mind, we are confident of our jurisdiction to consider Galvez-Bravo's petition.  None of the issues Galvez-Bravo presses with regard to the Board's step one determination are purely factual ones.  He does not ask us, for instance, to question the Board's

findings as to the severity of his daughter's dyslexia or the nature of her current treatment. Instead, Galvez-Bravo contests whether the Board engaged in reasoned decisionmaking in determining that he was ineligible for cancellation. Accepting the agency's factfinding, his arguments focus on whether there is a reasoned "connection" between the "facts found" and the "choice made" by the agency—in other words, whether the Board's decision was "arbitrary and capricious." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (citation omitted); *see also Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J.) ("[A]n agency action which is supported by the required substantial evidence may in another regard be 'arbitrary, capricious' . . . for example, because it is an abrupt and unexplained departure from agency precedent."); Harry T. Edwards, *2023 Post Publication Update for Federal Standards of Review* 228 (2023) ("The arbitrary and capricious standard encompasses . . . review of an agency's reasoning as distinguished from its fact-finding . . . ."). Said differently, his petition tees up a legal question distinct from the adequacy of the agency's factfinding. *See Ishac v. Barr*, 775 F. App'x 782, 787–89 (6th Cir. 2019); *see also Hernandez*, 59 F.4th at 768 (looking to the "substance" of petitioner's arguments to consider whether the challenge is to the Board's analysis and not its factual findings); *cf. Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021) (noting that a petitioner may not challenge the Board's factual and discretionary findings by "cloak[ing]" his attack as a "question of law") (citation omitted). So we turn to the merits.

*Merits*. We review the Board's decision not to reopen Galvez-Bravo's removal proceedings for an abuse of discretion. *See Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018). In practice, that means we will vacate the Board's determination only if we are left with the "definite and firm conviction" that the Board "committed a clear error of judgment." *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (quotation and citation omitted). Assessing only the basis set forth in the Board's decision, *see Trujillo Diaz*, 880 F.3d at 248, we ask whether Galvez-Bravo carried the "heavy burden" of showing that the Board's decision was arbitrary, irrational, or contrary to law. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (quotation and citation omitted). For example, if the Board's decision was made without any rational explanation or inexplicably departed from established Board practice, a remand would be necessary. *Trujillo Diaz*, 880 F.3d at 248.

The Board's decision on the motion to reopen was not arbitrary, irrational, or contrary to law.  *See Alizoti*, 477 F.3d at 451.  The Board began by articulating the appropriate legal standard—whether the new evidence presented was material, previously unavailable, and, when considered with the prior record, demonstrated a prima facie case for eligibility for the relief sought.  *See* 8 U.S.C. § 1229a(c)(7); *INS v. Abudu*, 485 U.S. 94, 104–05 (1988).  The Board then turned to that evidence, which included copies of Galvez-Bravo's children's academic and medical records as well as declarations from his wife and oldest son.  Acknowledging the challenging circumstances facing Galvez-Bravo's family and accepting that his removal would result in some hardship to his U.S. citizen children, the Board nonetheless concluded that the resulting hardship simply did not go "beyond that which would normally be expected to occur upon the removal of a close family member."  In so doing, the Board fairly articulated why the burdens expected to be experienced by the Galvez-Bravo family—including a lower standard of living and diminished educational opportunities—did not satisfy the demanding "exceptional and extremely unusual hardship" standard.  *See Trujillo Diaz*, 880 F.3d at 248 (requiring that the Board provide a "rational explanation" for its decision).

Galvez-Bravo sees things otherwise.  He first accuses the Board of misunderstanding the basis of his motion to reopen.  Specifically, he points to a line in the Board's opinion addressing whether his children's "potential relocation with him to Mexico will negatively impact" the minors.  A.R. at 4.  This statement, according to Galvez-Bravo, misunderstood the central premise of his motion to reopen—namely, that if he were to be deported, his children would *not* accompany him to Mexico, yet would suffer a sufficient hardship by forfeiting educational opportunities without Galvez-Bravo's financial support.  In Galvez-Bravo's mind, the Board wholly failed to view his hardship argument through the proper lens, warranting a remand.  *See Preçetaj v. Sessions*, 907 F.3d 453, 459 (6th Cir. 2018).

But the Board's reasoning stands separate from Galvez-Bravo's accusations.  Notably, Galvez-Bravo never made an independent hardship argument premised on the location of his children.  His arguments presented the same hardships, whether his children stayed in the United States or accompanied him back to Mexico.  The Board summed up the crux of these arguments together:  Galvez-Bravo's removal would deprive the children of their current learning

environment and disrupt their existing family support system, harming their "welfare and educational development." In the end, the Board determined that the resulting hardship, whether suffered in the United States or Mexico, simply did not satisfy the high bar warranting cancellation of removal. In so concluding, the Board plainly engaged with what Galvez-Bravo now describes as his petition's "central factual theory," namely, that his removal would result in his children losing their father's "financial support." We cannot fault the Board's passing reference to Galvez-Bravo's children's potential relocation to Mexico, especially when Galvez-Bravo made similar references in his motion to reopen. At the very least, the single line highlighted by Galvez-Bravo does not leave us with a "definite and firm conviction" that the Board "committed a clear error of judgment." *Sako*, 434 F.3d at 863 (quotation omitted).

That leaves Galvez-Bravo's second criticism of the Board, that the opinion departed without explanation from the Board's "settled course" of practice. Unexplained inconsistencies in the Board's "determinations regarding the same issue can support" an abuse of discretion claim. *Makdesion v. Garland*, No. 22-3436, 2023 WL 2972548, at *2 (6th Cir. Apr. 17, 2023) (citing *Zhang v. Gonzales*, 452 F.3d 167, 173 (2d Cir. 2006)). As evidence of the Board's purportedly incongruous approach, Galvez-Bravo points to several unpublished Board decisions reopening removal proceedings upon new evidence of a qualifying relative's learning disability, viewing such evidence as probative on the hardship question.

The orders relied upon by Galvez-Bravo are unpublished, warranting similar treatment by the Board as we would give our own unpublished work. *See Jomaa v. United States*, 940 F.3d 291, 298 (6th Cir. 2019). But even giving them their full weight, we see no inconsistency with the Board's approach. True, in some circumstances, the Board's failure to explain incompatible outcomes "may raise an inference of arbitrary decisionmaking." *Saleh v. Garland*, 100 F.4th 742, 747 (6th Cir. 2024) (quotation omitted). But that inference can be predicated only on an actual "conflict" between the results here and a pattern of results in the cases cited. *See Nissan v. Barr*, 788 F. App'x 365, 367 (6th Cir. 2019) (per curiam) (recognizing that "one inconsistent precedent doesn't make a decision arbitrary and capricious" (cleaned up)); *Makdesion*, 2023 WL 2972548, at *2 (holding a conflict on the "same issue" can support an abuse of discretion claim). And a review of the handful of two-decade old orders that Galvez-Bravo proffers does not reveal

such a conflict. At most, they suggest the diagnosis of a particular learning disability can sometimes amount to a sufficient hardship. But given the "unique factual record" that underscores each determination, this fact alone does not suggest any obvious inconsistency in the Board's approach here. *Nissan*, 788 F. App'x at 367; *Ettienne v. Holder*, 659 F.3d 513, 518 (6th Cir. 2011) (recognizing that while the Board "will sometimes reach opposite conclusions in cases that have many factual similarities, . . . the different outcomes are an expected result of the discretionary weighing required to make individualized determinations"), *abrogated on other grounds by Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020). Not all learning disabilities are the same. Nor does each removal decision have the same effect on the individual bearing that disability. In the end, we cannot say the Board's decision was so irrational as to warrant a remand.

**III.**

For these reasons, we deny the petition for review.