RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOSE BALTAZAR US,

*Petitioner*,

*v.*

No. 25-3504

TODD W. BLANCHE, Acting U.S. Attorney General,

*Respondent*.

———————————

On Petition for Review from the Board of Immigration Appeals.
No. A 205 505 554.

Decided and Filed: April 29, 2026

Before: COLE, GRIFFIN, and READLER, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Farhad Sethna, LAW OFFICES OF FARHARD SETHNA, Cuyahoga Falls, Ohio, for Petitioner. Shahrzad Baghai, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

READLER, J., delivered the opinion of the court in which COLE and GRIFFIN, JJ., concurred. COLE, J. (pp. 9–10), delivered a separate concurring opinion.

———————————

## OPINION

———————————

READLER, Circuit Judge. Jose Baltazar Us applied for cancellation of his removal from the United States to Guatemala, maintaining that his deportation would cause his U.S.-citizen children to suffer an "exceptional and extremely unusual hardship." An Immigration Judge determined that Baltazar Us did not qualify for cancellation, however, and the Board of

Immigration Appeals agreed.  Because no reasonable adjudicator would be compelled to disagree, we deny the petition for review.

## I.

Jose Baltazar Us is a native and citizen of Guatemala.  He entered the United States unlawfully in 2000 and has been living here since.  Baltazar Us is the sole provider for his family, which consists of his wife, a Guatemalan citizen, and their two U.S.-citizen children.

Officers contacted Baltazar Us in 2012 in conjunction with a criminal investigation. Upon learning that Baltazar Us was in the United States illegally, officers arrested him.  Soon after, the Department of Homeland Security sought his removal by serving Baltazar Us with a Notice to Appear in immigration court and charging him with being present in the United States without admission or parole.  Baltazar Us conceded the charge but sought cancellation of his removal under § 240A(b)(1) of the Immigration and Nationality Act (INA), which permits the Attorney General to cancel Baltazar Us's removal upon satisfaction of four conditions, including that his "removal would result in exceptional and extremely unusual hardship" to a spouse, parent, or child who is either a citizen of the United States or has been lawfully admitted for permanent residence.  *See* 8 U.S.C. § 1229b(b)(1)(D).  Even if those conditions are met, however, cancellation of removal remains a matter of discretion.  *See id.* § 1229b(b)(1) ("The Attorney General may cancel removal . . . ."); *see also id.* § 1229a(c)(4)(A)(ii); *Hernandez v. Garland*, 59 F.4th 762, 766 (6th Cir. 2023).  The Attorney General has delegated this discretionary power to each Immigration Judge (IJ) and the Board of Immigration Appeals (Board).  *Galvez-Bravo v. Garland*, 119 F.4th 1038, 1039 (6th Cir. 2024); *see also* 8 C.F.R. §§ 1003.1, 1003.10.

Here, the IJ focused on the "exceptional and extremely unusual hardship" requirement when considering Baltazar Us's application for cancellation of removal.  To support the application, both Baltazar Us and his wife testified that if he is removed, his two U.S.-citizen children would have to follow him to Guatemala where they would face financial, educational, and medical difficulties.

The IJ issued an oral decision denying cancellation of removal, concluding that Baltazar Us's children would not face exceptional and extremely unusual hardship as a result of their father's removal. Baltazar Us's removal, the IJ explained, would not separate the family. Nor would removal have a significant economic effect on the family—the IJ determined that Baltazar Us and his wife had the means to make an effective transition to Guatemala and were well-equipped to find employment once they arrived. The IJ likewise emphasized that the family's children lacked any serious or unusual medical conditions or learning difficulties that would make removal uniquely problematic, and that Baltazar Us had assets to assist the family's transition phase should he be removed to Guatemala, namely equity in their home and a vehicle. Given those findings, the IJ determined that while Baltazar Us's removal would subject his children to a lower standard of living and diminished educational opportunities, those obstacles did not satisfy § 240A(b)(1)'s "exceptional and extremely unusual hardship" requirement, making Baltazar Us ineligible for cancellation of removal. Baltazar Us appealed the IJ's decision to the Board, which issued an opinion affirming the IJ's denial of the application for cancellation of removal. Baltazar Us then timely petitioned this Court for review.

II.

Where, as here, the Board adopts the IJ's reasoning but adds its own gloss in a separate opinion, we deem the Board's decision as the final agency determination, while simultaneously considering the IJ's decision to the extent the Board adopted it. *Mateo-Esteban v. Garland*, 125 F.4th 762, 766 (6th Cir. 2025). Typically, we may review final orders of removal issued by the Board. *See* 8 U.S.C. § 1252(a)(1). With respect to orders regarding cancellation relief, however, Congress has limited our concern to "constitutional claims or questions of law," *see id.* § 1252(a)(2)(D), with the latter phrase including mixed questions of law and fact, *see Wilkinson v. Garland*, 144 S. Ct. 780, 788 (2024); *Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021). The central issue here—the Board's "application of the exceptional and extremely unusual hardship standard to a given set of facts"—is considered a mixed question. *Wilkinson*, 144 S. Ct. at 788–89; *Singh*, 984 F.3d at 1154.

By what metric do we review the Board's application of § 240A(b)(1)'s hardship standard? To date, the answer has been unsettled in our Circuit. Across our cases, we have

contemplated three possibilities:   clear-error review; substantial-evidence review under the Administrative Procedure Act; or substantial-evidence review under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).  *See Singh*, 984 F.3d at 1154.  Yet rather than resolving the issue, we have instead demurred and simply recognized that our review must be "deferential."  *See Trinidad-Contreras v. Bondi*, No. 22-3352, 2025 WL 2732495, at *3 & n.2 (6th Cir. Sep. 25, 2025) (quoting *Wilkinson*, 144 S. Ct. at 793)  (noting the split among our sister courts).

Recent guidance from the Supreme Court has now settled the question.  Earlier this year in *Urias-Orellana v. Bondi*, 146 S. Ct. 845 (2026), the Supreme Court applied IIRIRA substantial-evidence review to the mixed question of whether "a given set of undisputed facts rises to the level of persecution" for asylum eligibility. 146 S. Ct. at 851–53.  Under that standard, the Board's determination is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *See* 8 U.S.C. § 1252(b)(4)(B).  *Urias-Orellana*'s reasoning was not limited to the asylum context, however; it contemplates the same standard of review for any kind of mixed determination involving the application of the INA to a given set of established facts reviewed under § 242 of that statute.  *See* 146 S. Ct. at 853–54.  And we review mixed determinations involving the application of § 240A(b)(1)'s hardship standard to the IJ's factual findings under § 242.  *Wilkinson*, 144 S. Ct. at 788–89; *see also Urias-Orellana*, 146 S. Ct. at 853–54 (distinguishing between the jurisdictional bar found at 8 U.S.C. § 1252(a) for review of cancellation relief from the "type of review the court must afford to that issue under other provisions of the statute").   Thus, we hold that cancellation-of-removal hardship determinations are to be reviewed under the IIRIRA substantial-evidence standard.  *Accord Alonso-Juarez v. Bondi*, 169 F.4th 789, 795 (8th Cir. 2026); *Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1210–11 (11th Cir. 2025); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1002 (9th Cir. 2025); *Wilkinson v. Att'y Gen.*, 131 F.4th 134, 138–40, 142 (3d Cir. 2025).  *But see Toalombo Yanez v. Bondi*, 140 F.4th 35, 42 (2d Cir. 2025) (adopting clear-error standard instead).  Accordingly, the Board's determination that a given set of undisputed facts does not rise to the level of exceptional and extremely unusual hardship is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."   8 U.S.C. § 1252(b)(4)(B).

Applying the IIRIRA substantial-evidence standard here, we hold that no reasonable adjudicator would be compelled to conclude that Baltazar Us's "removal would result in exceptional and extremely unusual hardship" for his two U.S.-citizen children. *Id.* § 1229b(b)(1)(D). The exceptional and extremely unusual hardship standard sets a high bar—the resulting harm "sustained" by a deported noncitizen's qualifying relatives must be "significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). And because any deportation customarily presents "many severe hardships," demonstrating the requisite "significantly different . . . or greater" hardships than those typically associated with a deportation is "a difficult burden for a petitioner to meet." *Id.* Just so here: The Board and the IJ reasonably recognized that Baltazar Us's removal would cause some hardships, but nothing "exceptional and extremely unusual."

Consider the various difficulties that Baltazar Us posited his children would encounter in Guatemala. Begin with economic hardships. As "financial . . . strain[]" is a "typical result[] of removal," Baltazar Us was required to show that his children would experience a far graver financial challenge as a result of his deportation. *Id.* at 423. He has not done so. And the IJ found nothing in the record to suggest that Baltazar Us or his wife could not find work in Guatemala. *See Rodriguez-Salas v. Garland*, 849 F. App'x 582, 585 (6th Cir. 2021) (denying petition seeking cancellation of removal because petitioner "had not shown that he would be unable to work in Mexico given his prior work experience in construction and farming"). What is more, the IJ noted that Baltazar Us has a home with some equity and a vehicle, and that he can sell those assets to assist his family financially while he looks for work in Guatemala. Given those findings, we see no reversible error in the Board's and IJ's determination that Baltazar Us's children would not face exceptional and extremely unusual economic hardships because of their father's removal.

Next consider potential educational or medical hardships. "[R]educed educational opportunities" are a common side effect of removal. *Moctezuma-Reyes*, 124 F.4th at 422. So too is reduced access to medical treatments, one aspect of the "lower standard of living" accompanying most deportations. *Tolentino-Hernandez v. Garland*, No. 20-4021, 2021 WL

4782689, at *2–4 (6th Cir. Oct. 13, 2021).  And although Baltazar Us's children do not have any cognitive issues, learning difficulties, or serious medical conditions, if those needs did arise, the children could return to the United States for related treatments, as the IJ noted.  In view of these determinations, nothing in the record compels a conclusion that Baltazar Us's removal would result in exceptional and extremely unusual hardship under § 240A(b)(1).

Finally, turn to the country conditions in Guatemala.  Baltazar Us worries his children may have to endure violence and poor societal conditions in Guatemala.  But countrywide social concerns generally do not establish exceptional and extremely unusual hardship.  *See Tolentino-Hernandez*, 2021 WL 4782689, at *2 ("[A]dverse country conditions . . . generally will be insufficient in themselves."  (citation modified)).  As the IJ recognized, while "adverse country conditions in the country of removal" are a "relevant factor[]," those factors alone typically are not enough to "support a finding of exceptional and extremely unusual hardship."  A.R. at 38–39.  That aptly describes the situation here.  Recognizing the potential hardships tied to Baltazar Us's removal and his family's consequent move to Guatemala, the IJ and the Board nonetheless concluded that such challenges are commonly faced by citizens upon a family member's removal, meaning that the Baltazar Us family's burdens cannot be described as exceptional and extremely unusual.  *See Moctezuma-Reyes*, 124 F.4th at 422 (requiring the requisite hardship to be "significantly different from or greater than the hardship that a deported alien's family normally experiences").  All said, no reasonable adjudicator would be compelled to come to a different conclusion than the one the IJ and the Board arrived at here.

Baltazar Us disagrees.  To begin, he quibbles with the IJ's factual findings.  For instance, he asserts that neither he nor his wife would be able to find work in Guatemala.  He likewise takes issue with the IJ's findings regarding how much his children's education and medical care would be diminished in Guatemala when compared to what they would receive in the United States.  But we lack jurisdiction to disturb the IJ's factual determinations.  *See Wilkinson*, 144 S. Ct. at 792 (reaffirming that an IJ's factfinding on credibility, seriousness of medical condition, and level of financial support are unreviewable).  Thus, we cannot address this argument.

Taking a different tack, Baltazar Us argues that because receiving public assistance or financial support from in-laws negates a finding of exceptional and extremely unusual hardship,

the lack of such evidence must support the opposite conclusion here, as Baltazar Us is his family's sole provider. Pet'r's Br. at 21 (citing *Bonilla-Cruz v. Bondi*, No. 24-3290, 2025 WL 488765, at *4 (6th Cir. Feb. 13, 2025)). Not so. Applicants for cancellation of removal cannot satisfy § 240A(b)(1)'s hardship standard by arguing only that their circumstances will result in more serious hardships than those cases in which relief was denied. Instead, applicants must show that the resulting hardships in their specific cases are exceptional and extremely unusual. *See Singh*, 984 F.3d at 1154–55; *Martinez v. Bondi*, 132 F.4th 74, 79 (1st Cir. 2025) ("[T]he success or failure of a claim of exceptional and extremely unusual hardship depends on its own merits and on the particular facts presented." (citation modified)). In any event, the IJ's findings—which, again, we lack jurisdiction to review—support the IJ's and the Board's determination that Baltazar Us's family would not suffer a unique financial harm following his removal.

Even if the various hardships standing alone do not add up to "exceptional and extremely unusual hardship," Baltazar Us responds, they do when taking them collectively, a point he believes the Board and the IJ failed to consider. But the record nowhere suggests that either looked at the factors in isolation. Just the opposite, in fact. Take the IJ's order. *See* A.R. at 52 (IJ Order) ("Considering the facts of this case in the aggregate, the Court finds . . . [them] insufficient to support a finding of exceptional and extremely unusual hardship."); *id.* at 38 (IJ Order Addendum) ("All relevant factors, even if not extreme individually, must be considered in the aggregate in determining whether exceptional and extremely unusual hardship exists."). Or that of the Board. *Id.* at 3 (Board Order) ("[T]he Immigration Judge considered each of the hardships articulated by the respondent cumulatively, as well as his supporting evidence."). In any event, these hardships, even in the aggregate, do not suggest anything truly extraordinary would result from Baltazar Us's deportation. *See Moctezuma-Reyes*, 124 F.4th at 424. None of this, of course, is to say that Baltazar Us's children will not experience difficulties in relocating to Guatemala. But given the record before us, no reasonable adjudicator would be compelled to disagree with the IJ's and the Board's conclusion that the hardships from removal would not go "beyond that which would normally be expected to occur upon the removal of a close family member." *Galvez-Bravo*, 119 F.4th at 1041.

Lastly, Baltazar Us argues that we should remand his case to the Board for consideration of changed country conditions and his qualifying relatives' changed circumstances. Our review, however, is confined to the administrative record and relevant agency decisions before us, meaning it is too late for Baltazar Us to add to those materials. *See* 8 U.S.C. § 1252(a)(1) (providing that we may not take additional evidence); *id.* § 1252(b)(4)(A) (limiting judicial review to the administrative record on which the removal order is based).

\* \* \* \* \*

We deny the petition for review.

———————————

## CONCURRENCE

———————————

COLE, Circuit Judge, concurring.  Given our deferential standard of review, I agree that we must deny Baltazar Us's petition for review.  I write separately to emphasize an element of 8 U.S.C. § 1229b(b)(1)(D)'s hardship analysis.

IJs and the Board evaluate whether a petitioner demonstrates an exceptional and unusual hardship given the totality of the circumstances.  *See Matter of J-J-G-*, 27 I. & N. Dec. 808, 811 (B.I.A. 2020) ("The exceptional and extremely unusual hardship for cancellation of removal is based on a cumulative consideration of all hardship factors[.]"); *see also Araujo-Padilla v. Garland*, 854 F. App'x 646, 649–50 (6th Cir. 2021) ("In making [the exceptional and extremely unusual hardship determination], all hardship factors should be considered in the aggregate.") (citation modified).  Accordingly, when reviewing for substantial evidence, we must evaluate whether the IJ's and Board's factual findings support the legal conclusion that any identified hardships, taken together, are not exceptional and extremely unusual.  *See Urias-Orellana v. Bondi*, 146 S. Ct. 845, 852 (2026); 8 U.S.C. § 1229b(b)(1)(D).

Here, the record demonstrates that the IJ, and thus the Board, considered the cumulative effect of Baltazar Us's identified hardships.  The IJ evaluated each factor individually—safety concerns, economic hardship, healthcare availability, quality of life, and education.  The IJ then considered the aggregate impact of Baltazar Us's removal on his children and concluded that it did not rise to the level of exceptional and extremely unusual hardship.

There may be circumstances in which a child's removal to a country known for violence and high crime rates, such as Guatemala, would qualify as an exceptional and extremely unusual hardship.  *See Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024) (defining an "exceptional and extremely unusual hardship" as a situation that is "significantly different from or greater than the hardship that a deported alien's family normally experiences").  But Baltazar Us did not provide evidence that these general social ills would specifically harm his family.  Further, Baltazar Us's economic stability, the children's overall health and ability to return to the

United States, and the maintenance of their family unit weigh against a finding of exceptional hardship.  No reasonable adjudicator could therefore disagree that the record as a whole supports the IJ's and Board's conclusions.  *See Urias-Orellana*, 146 S. Ct. at 851.