NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0254n.06

Case No. 25-3102

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 04, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ISIDRO RAMOS-RAMOS, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| | ) | |
| | ) | |
| TODD BLANCHE, Acting U.S. Attorney General, | ) | |
| Respondent. | ) | OPINION |

Before: SUTTON, Chief Judge; BOGGS and RITZ, Circuit Judges.

SUTTON, Chief Judge. The Board of Immigration Appeals rejected Isidro Ramos-Ramos's application for cancellation of removal. We deny his petition for review.

Ramos is a Mexican citizen. His family entered the United States without authorization in approximately 1995, when he was four years old. They returned to Mexico in 1997 and re-entered the United States without authorization in 2000. Ramos last went to Mexico in 2006 or 2007 to visit his family, and in 2008 returned without authorization. Since at least 2009, he has lived in Columbus, Ohio, with his wife, Maria Guadalupe Ochoa Gonzalez, who also lacks legal status. In that time, they've had three daughters, now 14, 10, and 5 years old. No party to this case disputes the American citizenship of their three children. Ramos works in construction and serves as the family's main breadwinner while Ochoa Gonzalez looks after their children, though she has held outside-the-home jobs in the past.

The Department of Homeland Security initiated removal proceedings against Ramos in 2012. Ramos conceded his removability and applied for cancellation of removal based on hardship to his three daughters. Ramos argued that his removal would cause them emotional and economic harm. He also predicted that his removal would create challenges for his wife, which in turn would impair her ability to care for their children. The apparent premise of his application is that his family does not plan to return with him to Mexico.

Unpersuaded, an immigration judge denied the application in 2022. She found that Ramos was ineligible for cancellation of removal because he did not establish exceptional and extremely unusual hardship to his three citizen daughters. Ramos appealed to the Board of Immigration Appeals, which agreed with the immigration judge and rejected his appeal.

The Attorney General may cancel an alien's removal if the alien establishes (1) continuous physical presence in the United States for 10 years, (2) "good moral character," (3) the absence of certain convictions, and (4) proof that removal would "result in exceptional and extremely unusual hardship" to a spouse, parent, or child who is an American citizen or a legal permanent resident. 8 U.S.C. § 1229b(b)(1). Because the parties disagree over just one feature of this test—would Ramos's removal "result in exceptional and extremely unusual hardship" to his daughters?—we need to elaborate only on that requirement.

The hardship imperative creates a "high bar." *Baltazar Us v. Blanche*, 174 F.4th 509, 513 (6th Cir. 2026). It demands evidence of a hardship "significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). Because "any deportation customarily presents many severe hardships," *Baltazar Us*, 174 F.4th at 513 (quotation omitted), the "significantly different . . . or greater" standard requires more than the "expected . . . loss of financial prospects, separation from

loved ones, and reduced educational opportunities," *Moctezuma-Reyes*, 124 F.4th at 422. One might wonder why Congress would make things so difficult for the Ramos family by requiring "exceptional and extremely unusual hardship." 8 U.S.C. § 1229b(b)(1)(D). Absent such a demanding standard, the immigration laws would prioritize individuals who enter the country illegally over individuals who try to enter the country legally whenever the former give birth to children in America. *See Ayala-Flores v. INS*, 662 F.2d 444, 446 (6th Cir. 1981) (per curiam); *cf. Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 5 (2025) (Kavanaugh, J., concurring in the grant of the application for stay). Plus, nothing about a removal order prohibits a family from returning to the country of the parents' citizenship together.

We review the Board's determination that Ramos failed to establish "exceptional and extremely unusual hardship" for substantial evidence. *Baltazar Us*, 174 F.4th at 513 (citing *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 853–54 (2026)). The Board's hardship determination becomes "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Because the Board affirmed the immigration judge's ruling, we review the immigration judge's decision as supplemented by the Board. *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009).

On this record, Ramos has not cleared this "high bar." *Baltazar Us*, 174 F.4th at 513. After Ramos's removal, according to his application, his wife and their three daughters plan to remain in the United States. Ramos claims that his daughters and wife will face financial and emotional challenges if the government removes him to Mexico. But financial and emotional strains, difficult though it is to acknowledge, are natural and expected results of removal. *See, e.g., Galvez-Bravo v. Garland*, 119 F.4th 1038, 1039, 1041 (6th Cir. 2024); *Tolentino-Hernandez v. Garland*, 2021 WL 4782689, at *2–3 (6th Cir. Oct. 13, 2021).

Nothing in the record indicates that the strains faced by Ramos's family will be unusual or exceptional. Although Ramos has been the primary breadwinner to date and although his wife has remained home with their children, the children are now all old enough to attend school. Ramos's wife has held other jobs before, and Ramos's application does not explain why she cannot work outside the home now that the children are all in school. In addition, Ramos is a skilled mason and has not shown the unavailability of such work in Mexico, which would allow him to support the family from abroad. Ramos has savings of $25,000 and owns two vehicles together worth $8,000. *See Baltazar Us*, 174 F.4th at 513 (existence of savings undermines "exceptional and extremely unusual hardship" argument). Both Ramos and his wife also have family in Columbus, Ohio, and those family members live nearby and see each other regularly. Ramos has several "aunts, uncles, and many cousins" in the area, and Ochoa Gonzalez's sister lives ten minutes from Ramos's family. R.4-2 at 445. Ochoa Gonzalez's sister stays at home with her children, and Ramos's application does not explain why after-school support could not be shared between the families, all of which would mitigate some of the challenges caused by his departure. *Moctezuma-Reyes*, 124 F.4th at 423; *see Francisco-Diego v. Garland*, 2022 WL 1741657, at *3 (6th Cir. May 31, 2022); *Rodriguez-Salas v. Garland*, 849 F. App'x 582, 585 (6th Cir. 2021).

The record does not indicate that Ramos's children, who are all healthy, will go "without a support structure" or have "compelling special needs in school." *Moctezuma-Reyes*, 124 F.4th at 423–24 (quotation omitted). However unfortunate, the hardships that Ramos's daughters will face if their father returns alone to Mexico fit well within those "normally [] expected to occur upon the removal of a close family member." *Galvez-Bravo*, 119 F.4th at 1041.

The reality that Ramos's wife had mental-health challenges in Mexico arising from her father's abandonment of the family does not satisfy the exceptional-and-extremely-unusual

4

standard either. Ochoa Gonzalez, it is true, suffered depression as a teenager and attempted suicide at the age of 14 by ingesting a bottle's worth of vitamin pills. And according to Ramos, Ochoa Gonzalez "became a bit depressed" again in 2014 when the couple lost a baby. R.4-2 at 457. But she told the immigration judge that she has never experienced depression as an adult. And when asked how Ramos's removal would affect her ability to care for their daughters, she spoke only of her reduced time at home after getting a full-time job. The record shows that she was treated for depression in Mexico, and no evidence shows that she has had any such problems since 2014.

Resisting this conclusion, Ramos argues that the Board, in contrast to the Immigration Judge, did not specifically address the risks of depression to his wife if he leaves the country. But the Immigration Judge did satisfactorily address this speculative claim, and the Board "need not write an exegesis on every contention." *Vasquez-Rivera v. Garland*, 96 F.4th 903, 908 (6th Cir. 2024) (quotation omitted). "[O]ur cases have [] repeatedly said that the Board . . . need not issue an opinion that discusses and rebuts every piece of record evidence that cuts against its findings." *Palucho v. Garland*, 49 F.4th 532, 537–38 (6th Cir. 2022). This rule necessarily relieves the Board from any obligation to address speculations unsupported by the record, particularly when, as Ramos himself acknowledges, this "argument [was] easy to dismiss." Petitioner's Br. 12. A "contrary view would compel a remand in nearly every immigration case." *Palucho*, 49 F.4th at 537–38.

Ramos also challenges the finding that he can find meaningful work in Mexico. But the Board did "recognize" Ramos's broader "concerns about providing for his family" once he returned to Mexico. R.4-2 at 4. But the Board decided "that reduced economic and educational opportunities, without more, do not rise to the level of 'exceptional and extremely unusual' hardship." R.4-2 at 4. To the extent he challenges the finding itself, we lack jurisdiction to review

5

fact findings underlying a hardship determination. *Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021). And given those findings, the Board did not err in its application of the high bar created by the hardship standard.

For these reasons, we deny the petition for review.